**Robert J. WANNER, a/k/a Tamochu Mariah, a/k/a Joseph John Blackeagle, Jr., Petitioner,**

v.

**Winston E. SATRAN, Warden, North Dakota State Penitentiary, and Nicholas J. Spaeth, Attorney General, State of North Dakota, Respondents.**

No. A1–86–011.

United States District Court,
D. North Dakota,
Southwestern Division.

March 12, 1986.

Robert John Wanner, Bismarck, N.D., pro se.

Robert P. Bennett, Asst. Atty. Gen., Bismarck, N.D., for respondents.

## ORDER AND MEMORANDUM

CONMY, Chief Judge.

Robert J. Wanner has filed a petition with this court for writ of habeas corpus pursuant to 28 U.S.C. section 2254. He makes numerous claims going to the constitutionality of his conviction, including claims that

(1) his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure,

(2) that his conviction was obtained by use of evidence gained pursuant to an unlawful arrest,

(3) that his ability to defend himself was thwarted by the trial court's demand that he first testify, thereby forcing him to choose between his right to defend and his privilege against self-incrimination,

(4) that he was denied the right to subpoena witnesses and documents for use in his defense,

(5) that he was denied effective assistance of counsel,

(6) that he was denied the right to confront witnesses against him; and

(7) that he was denied his right to a grand jury indictment.

He also claims that his recent transfer to the North Dakota State Hospital in Jamestown, North Dakota, violated federal law forbidding removal of habeas petitioners from their present place of incarceration.

The State has filed its Return to Petition for Writ of Habeas Corpus, in compliance with this court's Order to Show Cause issued February 3, 1986. The petitioner has challenged the timeliness of the State's response. This court notes that the State's filing on the due date was proper.

The State asserts that the petitioner has failed to exhaust his available state remedies, and that this court should therefore dismiss the petition. The State also argues that even if this court considers the petition, it should be dismissed because Mr. Wanner's claims lack merit.

*Procedural Background*

The State has provided an excellent summary of the procedural background of this case. It states:

Wanner was arrested on September 27, 1983, in the city of Mandan, Morton County, North Dakota, on forgery charges. On March 6, 1984, he was convicted in North Dakota District Court of three counts of forgery in a jury trial presided over by the Honorable Gerald G. Glaser, District Judge. Following the trial Judge Glaser sentenced Wanner to five years in the State Penitentiary on each of the three forgery charges, with each sentence to run concurrently.

Wanner filed a Notice of Appeal with the Morton County Clerk of District Court on March 13, 1984. The Morton County Clerk of District Court transmitted the Notice of Appeal to the North Dakota Supreme Court, and said Notice of Appeal was filed with the North Dakota Supreme Court on March 14, 1984.

On March 15, 1984, Luella Dunn, Clerk of the Supreme Court (hereinafter Mrs. Dunn) wrote Wanner under one of his alias names, John Joseph Blackeagle, to advise him of the filing of his Notice of Appeal and that the Trial Transcript must be provided to the Supreme Court by May 2, 1984.

On May 10, 1984, Mrs. Dunn wrote Wanner and advised him that the Supreme Court had received transcripts and as appellant he would have 40 days in which to serve and file a brief, which period was to expire on June 18, 1984.

On July 13, 1984, Mrs. Dunn wrote Wanner to advise him that his brief had not been filed prior to the June 18, 1984, deadline and that he had not requested an extension of time to file his brief. Mrs. Dunn further requested information from Wanner on how he intended to proceed.

In response to Wanner's letter dated July 15, 1984, inquiring into the delay on his appeal, Mrs. Dunn wrote Wanner on July 18, 1984. In her letter, Mrs. Dunn again advised Wanner that he had failed to file an appellant's brief within the 40 day period, that he must attempt to follow the Rules of Appellate Procedure and that said rules were available to him at the State Penitentiary library. Wanner responded in a letter dated July 19, 1984, advising Mrs. Dunn that his legal brief was incorporated into the Appeal itself as filed. Wanner further asserted that all necessary documents had been filed with the Court prior to March 10, 1984.

On August 22, 1984, the State filed a Motion to Dismiss Appeal because of Wanner's failure to comply with the North Dakota Rules of Appellate Procedure.

On August 24, 1984, Mrs. Dunn wrote a letter to Wanner to advise him that a Motion to Dismiss the Appeal had been filed and that the Supreme Court would allow Wanner until September 6, 1984, to file and serve a response to the Motion to Dismiss. Wanner filed a response on August 27, 1984.

On September 17, 1984, the North Dakota Supreme Court considered the Motion to Dismiss the Appeal and Wanner's response and directed Mrs. Dunn to advise Wanner that unless he filed a brief in compliance with the Rules of Appellate Procedure within 30 days from September 17, 1984, his Appeal would be automatically dismissed. On September 25, 1984, the North Dakota Supreme Court received an unentitled document from Wanner which was purported to be his appellant's brief. On October 2, 1984, Mrs. Dunn advised Wanner by letter that the document which he had submitted as his brief did not comply with the applicable Rules of Appellate Procedure and he would have until October 17, 1984, to comply. Wanner responded with a letter dated October 8, 1984.

On October 24, 1984, the North Dakota Supreme Court entered an Order dismissing Wanner's Appeal for failure to conform to the Rules of Appellate Procedure.

On January 13, 1986, Wanner filed his Petition for Writ of habeas corpus in the above-entitled action in Federal District Court alleging seven grounds. ...

Respondent's Brief in Support of Return to Petition for Writ of Habeas Corpus 2–4. This statement represents a fair rendering of the procedural background of this case.

## Decision

### Exhaustion of State Remedies

The State argues that Mr. Wanner's petition should be dismissed because he has not exhausted his available state remedies. Specifically, the State asserts that Mr. Wanner, to the best of anyone's knowledge, has never appealed his conviction under the Post-Conviction Relief Act, N.D. C.C. ch. 29–32.1. Section 29–32.1–01 provides, in pertinent part:

1. A person who has been convicted of and sentenced for a crime may institute a proceedings applying for relief under this chapter under the ground that:

a. The conviction was obtained or the sentence was imposed in violation of the laws or the Constitution of the United States or of the laws or Constitution of North Dakota.

. . . .

e. Evidence, not previously presented and heard, exists requiring vacation of the conviction or sentence in the interest of justice;

. . . .

h. The conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error available before July 1, 1985, or any common law, statutory or other writ, motion, proceeding, or remedy.

N.D.C.C. section 29–32.1–01(1) (Supp.1985).

This court recognizes the validity of the State's argument. Under section 2254, Title 28, United States Code, this court may not grant a petition for writ of habeas corpus "unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. section 2254(b) (1977). Further, [a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. section 2254(c) (1977).

■ The law is unequivocal. Mr. Wanner has apparently not raised any of his claims with the North Dakota Supreme Court via the Post-Conviction Relief Act, *supra.* Nor has this court found any circumstances warranting an exception to this requirement. Nevertheless, where a petitioner's claims are obviously without merit, it is proper for this court to consider the petition without first requiring exhaustion of state remedies. *Thomas v. Muncy,* 408 F.Supp. 734 (D.Va.1976), *aff'd* 558 F.2d 1030 (4th Cir.1977); *Coleman v. Paderick,*

382 F.Supp. 253 (D.Va.1974); *United States ex rel. Crawford v. Anderson,* 303 F.Supp. 577 (D.Del.1969); *Rodriguez v. Nelson,* 286 F.Supp. 321 (D.Cal.1968); *United States ex rel. Bostic v. Commonwealth of Pennsylvania,* 262 F.Supp. 428 (D.Pa.1967).

*Claims*

*Removal of Prisoner to State Hospital*

■ Under section 12–47–27, North Dakota Century Code, the Warden of the North Dakota State Penitentiary has the authority to order a person transferred to the North Dakota State Hospital for evaluation and treatment. N.D.C.C. section 12–47–27(2) (Supp.1985). Further, to the best of this court's knowledge, there is no rule prohibiting transfer of a prisoner to various locations within a district during the pendency of the prisoner's habeas petition. The petitioner's concern is without merit.

*Ineffective Assistance of Counsel*

■ Mr. Wanner claims that he was denied effective assistance of counsel. It appears from the transcripts that Mr. Wanner had been represented by at least two different attorneys. Transcript of Arraignment and Motions at 2. He was represented by appointed counsel at the preliminary hearing on the forgery charge, and it appears that such counsel performed competently. It is clear from the transcripts, however, that Mr. Wanner was dissatisfied with his appointed counsel, and demanded that the court excuse him. It is intimated that Mr. Wanner was less than complimentary in his dealings with his attorney. As his appointed counsel pointed out, Mr. Wanner had used various words to describe him, including "a steer, a eunuch, a dog, a fraud, a liar." Mr. Wanner's counsel further stated, "His treatment of me is abusive and offensive, and because of his conduct toward me, I am at this point finding the defendant such a repulsive person that I do not wish to have to have anything to do with him." Transcript of Arraignment and Motion, at 5–6. At that point, the trial judge told Mr. Wanner that he would have

a choice of representing himself, or continuing with his appointed counsel. Mr. Wanner stated: "I am not going to continue with anybody." *Id.* at 7. The court then ruled that Mr. Wanner would be allowed to proceed pro se, but that his appointed counsel would be required to sit in on all hearings and be available for advice, should Mr. Wanner request assistance. *Id.*

Mr. Wanner had counsel of his own choice—himself. If such counsel was incompetent, Mr. Wanner is precluded from later complaint. This court finds that his claim of ineffective assistance of counsel is without merit.

### Evidentiary Claims

Mr. Wanner claims that his conviction was obtained by use of evidence obtained through an unconstitutional search and seizure, and by use of evidence obtained pursuant to an unlawful arrest. It appears that Mr. Wanner's primary objection is to the admission of a checkbook and check obtained by police from Sandy Mariah/Schaner, Mr. Wanner's putative wife.

■ Mr. Wanner failed to object to the admission of this evidence at trial. Indeed, when the court asked if he had any objections, he stated that he did not. Trial Transcript at 116, 181. Even if the evidence was obtained unconstitutionally, Mr. Wanner waived that objection when he failed to object at trial. He cannot now be heard to complain that the evidence should have been excluded.

■ In any case, it appears that the evidence was not obtained illegally. Testimony indicated that Sandy Mariah/Schaner was a resident of the house in which the evidence was found, and that she had access to everything within the house. Ms. Mariah/Schaner provided the evidence upon the request of the law enforcement officers. There is no evidence that she was coerced in any way.

Based on the foregoing, this court rules that Mr. Wanner's objections regarding evidence admitted at trial are without merit.

### Warrantless Arrest

■ Mr. Wanner also complains that his arrest was invalid because it was obtained without warrant. This complaint is without merit. The general rule is that an officer may arrest without a warrant if he has probable cause to believe that the person has committed a felony. *Carroll v. United States,* 267 U.S. 132, 156–57, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925). *See also* ALI, Model Code of Pre-Arraignment Procedure, Official Draft 1975, at 289. In any event, it is a well-established rule that a conviction will not be vitiated because the defendant was unlawfully brought before the court. *See United States v. Crews,* 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980) (an illegal arrest, without more, is neither a bar to subsequent prosecution nor a defense to a valid conviction); *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975) (it is an established rule that illegal arrest does not void a subsequent conviction); *Frisbie v. Collins,* 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952) ("[t]here is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will").

### Right to Confront Witnesses

■ Mr. Wanner claims that he was denied the right to confront witnesses against him. It appears that this claim relates to the transcribed testimony of Louise Wanner, the petitioner's mother.

Louise Wanner testified against the petitioner at the preliminary hearing. Mr. Wanner was represented by appointed counsel at that hearing. Prior to trial, Mrs. Wanner died. At trial, the State was permitted to read the transcript of her testimony at the preliminary hearing into the record.

Rule 804, North Dakota Rules of Evidence, excludes testimony of an unavailable witness from the hearsay rule. That rule provides:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

N.D.R.Ev. 804(b)(1) (Supp.1985). A declarant is unavailable where s/he "is unable to be present or to testify at the hearing because of death...." *Id.* 804(a)(4).

The North Dakota Supreme Court has ruled that testimony given at a preliminary hearing is admissible at trial as an exception to the hearsay rule where the criminal defendant had had an opportunity to cross-examine and develop the witness's testimony. *State v. Roquette*, 290 N.W.2d 260, 265 (1980); *State v. Garvey*, 283 N.W.2d 153, 156 (1979).

The petitioner's claim that his right to be confronted by witnesses against him was violated is without merit.

### Miranda Warning

■ Mr. Wanner makes much of the denial of his *Miranda* rights, asserting that since the police officers failed to give him his warnings (a fact that they freely admit) his arrest was invalid, mandating reversal of his conviction.

The petitioner is apparently confused as to the applicability and effect of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Miranda* the United States Supreme Court held:

[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise

deprived of his freedom of action in any significant way.

384 U.S. at 444, 86 S.Ct. at 1612. *Miranda* does not come into play until you have a *custodial interrogation.* While it appears that Mr. Wanner was in custody, there is no assertion that he was questioned by the police officers. In any event, when *Miranda* warnings are not given, the prosecution is prohibited from using any statements made by the accused in response to custodial interrogation. There is no assertion that the State attempted to use at trial any statements made by Mr. Wanner, and a reading of the transcripts does not reveal any such attempt. Mr. Wanner's *Miranda* claim is without merit.

### Fifth Amendment Privilege and Subpoena Rights

■ Mr. Wanner claims that the trial court unconstitutionally put him in the untenable position of choosing between defending himself, and preserving his fifth amendment privilege. Specifically, Mr. Wanner objects that the trial court informed him that it would consider his request to subpoena documents and witnesses if Mr. Wanner would agree to take the stand. This claim is tied with a claim that the trial court denied Mr. Wanner the right to subpoena witnesses and documents for his defense.

Mr. Wanner's claim is completely unsupported by the record. It appears that Mr. Wanner's confusion stems from the following in-chambers conference discussing evidence that Mr. Wanner wanted to present to the jury:

THE DEFENDANT: Probably the most important is the contract I had with Louise Wanner in November of 1981. She gave me power of attorney to act for her and sign her name to all legal and/or financial documents, so it would obviously be absurd for me to resort to forgery, since I already had her authority.

THE COURT: Well, these documents are not in evidence and don't prove anything in themselves. Are you going to testify about them?

THE DEFENDANT: I don't know.

THE COURT: You can't just wave a piece of paper around and say it establishes one thing or another. Somebody is going to have to establish the document

THE DEFENDANT: Somebody is going to establish that document.

THE COURT: What I am trying to tell you, Mr. Wanner, is that, in order to get a piece of evidence introduced, somebody has to testify—you or somebody else—and tell the jury where it came from and what circumstances surrounding it are and then be cross-examined by the prosecutor.

THE DEFENDANT: Well, I may have no choice. I have not been allowed to subpoena witnesses.

THE COURT: Why not?

THE DEFENDANT: I had a motion to subpoena witnesses which you refused to act on.

THE COURT: No, Mr. Wanner, you keep saying that, but it is not a fact. I have no power to deny you the right to subpoena witnesses, and I have not done so.

. . . . .

6 [the document in dispute] I will allow if someone gets on the stand and testifies that they saw Louise Wanner sign this document or can identify her signature.

Trial Transcript 187–89.

Rule 17, North Dakota Rules of Criminal Procedure, provides:

(b) Defendants unable to pay. The court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.

. . . . .

(c) For production of documentary evidence and of objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or other objects therein designated.

N.D.R.Crim.Pro. 17(b), (c) (Supp.1985).

This court has reviewed the Morton County District Court's file concerning Mr. Wanner's trial. The papers filed by Mr. Wanner were a maze of illogic and insults directed at the trial court, interspersed with notions of law and justice originating and existing only in the petitioner's mind. This court was unable to find any reference to Rule 17, or any credible request by the petitioner for subpoenaes. The few discernible subpoena requests were for documents irrelevant to the resolution of the case, or for persons who did not exist.[1] The petitioner's claim that he was not allowed to subpoena documents or persons for his defense is without merit.

*Grand Jury Indictment*

Finally, the petitioner asserts that the state's failure to obtain a grand jury indictment renders his conviction invalid.

 Rule 7, North Dakota Rules of Criminal Procedure, provides that all prosecutions shall be by indictment *or* information. By statute, the state may choose its method of prosecution. In this case, the state chose to prosecute by information. This court cannot say that that choice was erroneous. The petitioner had no constitutional entitlement to a grand jury indictment in a state criminal proceeding. His assertion is without merit.

*Conclusion*

Federal courts are empowered to review state court proceedings and to strike down convictions obtained in violation of the defendant's constitutional rights. This power

---

**1.** For example, the petitioner demanded that the court subpoena the entire banking history of Louise Wanner, so that he could prove that she had issued checks to him in the past; and he demanded that Robert J. Wanner—who the petitioner claimed was his half-brother—be subpoenaed as a witness on his behalf. This court is not persuaded by the petitioner's assertion that the reason his fingerprints matched those previously taken of Robert J. Wanner is that the CIA changed them.

is conditioned upon the state courts being given an opportunity to review and correct alleged procedural or substantive errors, and in the writer's opinion, should be exercised only in situations where the record shows a clear violation. Habeas proceedings were not intended as an alternate appeal route and will not be so treated by this court.

Where, as here, an apparently emotionally disturbed individual refuses assistance of counsel, tries his own case and waives objections to evidence, does not understand the necessity for foundation or authentication of documents, fails to perfect his own appeal and parrots descriptive names of legal theories without understanding the meaning and use of the legal theories, the effectiveness of the habeas remedy for others with possible valid complaint is diluted. The requirement of sifting through "peanut assaults," insult through refusal to use the alias of the week, filing of documents captioned "mandamus" and "criminal complaint" and threats of suit for wrongful death in Tibet,[2] tend to prejudice the court against later and possibly valid habeas claims.

Based on the foregoing IT IS ORDERED THAT THE PETITION FOR WRIT OF HABEAS CORPUS FILED BY ROBERT J. WANNER, a/k/a/ TAMOCHU MARIAH, a/k/a JOSEPH JOHN BLACKEAGLE, JR., IS DENIED.

---

2. In addition to his habeas petition, Mr. Wanner has mailed various documents to this court alleging the state's culpability for various acts, including, among other things, (a) an alleged incident where a prison guard shot a "killing projectile" (a peanut) at the petitioner with a rubber band; (b) the malicious refusal of prison officials to refer to Mr. Wanner or his wife by their true names; and (c) a murder plot against Mr. Wanner's elderly father, who had recently died in Tibet.