**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Ross PICKAR, Defendant and Appellee.**

**Cr. No. 890270.**

Supreme Court of North Dakota.

March 27, 1990.

James W. Wold, State's Atty., Cooperstown, for plaintiff and appellant.

Roger R. Weisenburger, Valley City, for defendant and appellee.

LEVINE, Justice.

The State appeals from an order of the district court suppressing as involuntary a statement of defendant Ross Pickar. We affirm.

Pickar was charged with two counts of manslaughter, stemming from a single-vehicle rollover accident in which two women, both friends of his, were killed. Initially, Pickar admitted to investigators only that he had been in the vehicle at the time of the accident. However, Pickar's rib inju-

ries suggested to investigators that he was the driver and survived the accident because the steering wheel prevented his being thrown from the vehicle. A few days after the accident, officers asked Pickar to come to the sheriff's office to answer a few questions. Pickar consented and underwent questioning for about an hour and forty-five minutes. For the first one hour, thirty minutes of the interrogation, Pickar repeatedly denied driving. Finally, he confessed.

Immediately following the interrogation, Pickar was arrested. Charges were filed against him the next day. Subsequently, Pickar moved to suppress his confession. The district court granted the motion upon determining that the confession was involuntary.[1] The State appealed.

The State argues the record does not support the trial court's finding of involuntariness.

■ Because voluntariness of a confession depends upon questions of fact to be resolved by the trial court, and because the trial court is in a superior position to judge credibility and weight, we show great deference to the trial court's determination of voluntariness. *See State v. Newnam*, 409 N.W.2d 79 (N.D.1987); *State v. Discoe*, 334 N.W.2d 466, 468 (N.D.1983). This Court does not conduct a de novo review. *State v. Discoe, supra* at 470. We will reverse only if the trial court's decision is contrary to the manifest weight of the evidence. *Newnam*, 409 N.W.2d at 84; *Discoe, supra* at 468; *State v. Carlson*, 318 N.W.2d 308 (N.D.), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 609 (1982); *State v. Roquette*, 290 N.W.2d 260 (N.D.1980); *State v. Thompson*, 256 N.W.2d 706 (N.D. 1977).

■ A confession is voluntary if it is the product of the defendant's free choice, rather than the product of coercion. *See Discoe, supra* at 467. Voluntariness is de-

termined by examining the totality of the circumstances surrounding the confession. *Blackburn v. Alabama*, 361 U.S. 199, 206, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960); *Discoe, supra*, 334 N.W.2d at 467. The inquiry focuses on two elements: (1) the characteristics and condition of the accused at the time of the confession and (2) the details of the setting in which the confession was obtained. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Discoe, supra*, 334 N.W.2d at 467–68. No one factor is determinative. *Schneckloth, supra; Discoe, supra*, 334 N.W.2d at 468.

### 1. Characteristics of Accused

■ Among the relevant factors related to the characteristics of the accused are the age, sex and race of the suspect, his or her education level, physical or mental condition and prior experience with the police. 1 W. LaFave & J. Israel, *Criminal Procedure* § 6.2 at 448–49 (1984). The State attacks the trial court's finding that at the time the confession was made, Pickar "was emotionally unbalanced and was suffering from such severe emotional stress that it was likely that he might commit suicide." In support of this finding, the trial court relied on an affidavit of the interrogating officers made the day after the confession. The affidavit described Pickar as greatly distressed and under such severe emotional distress that he was "subject to ... inflicting injury or death upon himself."

■ The State argues that the affidavit described the defendant's condition following the interrogation and not at the time of the confession. We agree that it is the condition of the defendant at the time of the confession which is relevant. However, the trial court could fairly infer from

---

1. Pickar did not argue and so we do not consider whether his confession was required to be suppressed pursuant to NDCC § 29–21–12.1. That section provides:

"Any statement, admission, or confession procured from any person charged with

crime in a state court, which was obtained by duress, fraud, threat, or promises, shall be inadmissible in evidence against said person in any criminal action."

the affidavit's description of Pickar's suicidal state immediately following the interrogation that Pickar was emotionally distressed at the time of the interrogation. Furthermore, there is other evidence in the record which supports the court's finding of emotional stress. Pickar was a close personal friend of the two deceased women and had been in the truck with them when the vehicle overturned. He had spent time with them that evening. During the interrogation Pickar "had tears in his eyes or was whimpering." We conclude that there is sufficient evidence in support of the finding of emotional stress at the time of the interrogation.

■ The trial court found nothing in the record to indicate that Pickar had prior experience with police practices. The State disagrees, arguing that one of the interrogators testified that he knew Pickar from "prior visitation and dealings," and Pickar had pleaded guilty to fleeing or attempting to elude police and reckless driving in 1984. Pickar's prior conviction, however, was not disclosed to the trial court. Nor does the officer's oblique reference to his prior "visitation and dealings" with Pickar require the court to find that Pickar had a police record. The State had the burden of proving the voluntariness of Pickar's confession and of producing evidence on relevant factors, including Pickar's prior contacts with police. *See State v. Whiteman*, 67 N.W.2d 599 (N.D.1954); *State v. Roquette*, 290 N.W.2d at 264. Having failed to do so, it can hardly complain of the finding that Pickar had no experience with police, when the record would sustain no other finding.

The trial court also found that at the time of the confession, Pickar was suffering ill effects from physical injuries he sustained in the accident. The State challenges this finding, arguing that the defendant never complained to his interrogators about his pain or injuries. However, it is clear from the record that the officers knew that Pickar was in pain. One officer testified that, "I had gathered that he had rib injuries and that is why he was holding his side."

■ The State counters that Pickar's pain was not severe enough to vitiate the voluntariness of the confession. But there is no requirement that a single factor, such as the defendant's pain, be sufficient to render the confession involuntary. *Schneckloth, supra.* *See Discoe*, 334 N.W.2d at 470–71 n. 4. It is for the trial court to weigh the evidence of pain and its effect on the free will of the defendant as one factor in the totality of the circumstances. *See Discoe, supra*, 334 N.W.2d at 470–71 n. 4. Where the trial court has done so, we defer to its finding.

### 2. Police Conduct

The State next attacks several findings of coercive police conduct. The trial court found that the defendant, in a weakened and suggestible state, was interrogated in a small room for more than an hour and a half, where he was "boxed in" by his interrogators and asked more than twenty times whether he was driving the night of the accident. The trial court also found that the officers exerted psychological pressure on the defendant by playing on his sense of guilt and sense of duty to the families of his deceased friends.

■ Police conduct is an important component of the details of the setting in which the confession was obtained, the second element of an inquiry into voluntariness. The traditional indices of coercive police conduct include the duration and conditions of detention, the attitude of the police toward the defendant and the diverse pressures which sap the accused's powers of resistance or self-control. *Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987).

■ In arguing that the length of interrogation was not coercive, the State relies on this Court's validation of the confession in *Newnam*, 409 N.W.2d 79 (N.D.1987), which was extracted from a lengthier interrogation than Pickar's. This argument misses the point. In *Newnam*, we affirmed the trial court's finding of voluntariness because it was not contrary to the manifest weight of the evidence. Here, the trial court determined that, under all of the

circumstances of Pickar's interrogation, the police conduct was coercive. The length of the questioning was one of the circumstances evaluated by the trial court. The trial court's findings on the conditions of Pickar's interrogation, including the length of questioning, are not contrary to the manifest weight of the evidence.

Likewise, the finding of psychological pressure is supported by sufficient evidence. The interrogators urged Pickar to confess to ease his conscience and put an end to the anguish of the families of the deceased women. They counseled Pickar to "put everybody's mind at ease.... It's a real big step, but it's something you have to do for you, Ross, and you have to do it for everybody else."

 Although the State argues that any pressure to confess came from within the defendant rather than from police officers, psychological pressure is not examined in a vacuum, without consideration of its impact on the defendant or its cumulative effect when used in combination with other interrogation techniques. *See Haley v. Ohio*, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948) [especially susceptible defendant]. The trial court identified the techniques which contributed to the coercive atmosphere. Whether each technique was coercive by itself is not determinative. The proper inquiry is whether, given the characteristics and condition of the accused, the atmosphere surrounding the interrogation was coercive. *See Haley, supra.* The trial court evaluated the nature of police pressure on Pickar and its impact on his weakened physical, mental and emotional condition and concluded that Pickar's statement was a product of police coercion, not free choice. The finding is not contrary to the manifest weight of the evidence and thus is entitled to our deference.

In addition to the psychological pressures exerted by the police, the trial court found that the police promised Pickar a benefit in exchange for the confession. The trial court found that the implied benefit to Pickar for confessing was that he would not be prosecuted and that he could derive solace from easing the minds of the families that their loved ones were not driving. The evidence disclosed that the officers assured Pickar that the police were "not on a headhunt" and "not out to get" Pickar.

We recognized in *Discoe, supra,* 334 N.W.2d at 470, that inducements offered to the accused in return for a confession might render the confession involuntary. At the very least, promises made by the police, implying no presecution, are part of the totality of circumstances and may weigh on the side of involuntariness.

We hold that the trial court's determination of involuntariness is not against the manifest weight of the evidence. We thus affirm the suppression order.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.