**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Martin Norman TAILLON, Defendant and Appellee.**

**Cr. No. 900351.**

Supreme Court of North Dakota.

May 21, 1991.

J.E. Rick Brown, Asst. State's Atty., and Stanley M. Kenny, third-year law student, Grand Forks, for plaintiff and appellant.

Gordon A. Dexheimer of Dexheimer Law Firm, Grand Forks, for defendant and appellee.

LEVINE, Justice.

The State appeals from a district court order suppressing as involuntary incriminating statements made by defendant Marty Norman Taillon. We affirm.

The body of a woman was found in the Red River near Lincoln Park in Grand Forks. The police investigation identified Taillon as someone with whom the victim had been seen the night of her death. Taillon received a request, relayed through his employer, that he go to the Grand Forks police station to speak with an investigator.

Taillon consented and was questioned at the police station for approximately one hour and fifteen minutes. The investigator advised Taillon of his *Miranda* rights [1] at the beginning of questioning. Approximately twenty minutes into the questioning, Taillon asked that the recorder be turned off and when the investigator re-

1. "Prior to any questioning [in a custodial setting], the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

fused, Taillon said, "Well, then I'm not talking anymore, because, I didn't do nothin' to her." The investigator continued to question Taillon and Taillon answered. Later, Taillon interjected, "I want a lawyer...." The investigator asked, "Do you want a lawyer, now? Do you want to stop talking to me at this time, or do you want to get this done?" Taillon responded, "I want to get this done." The questioning continued and Taillon made several incriminating statements. Taillon was arrested at the end of the interview and charged with murder.

Subsequently, Taillon moved to suppress his incriminating statements. After reviewing the record, which included a videotape of Taillon's interview, the district court granted the suppression motion upon determining that certain statements were involuntary, the product of psychological coercion. The State moved for an order clarifying the initial order and offered additional evidence indicating Taillon's past contact with police. The district court affirmed its initial ruling and the State appealed.

■ On appeal, the State challenges the trial court's determination of involuntariness, arguing that it is not supported by the evidence. "Because voluntariness of a confession depends upon questions of fact to be resolved by the trial court, and because the trial court is in a superior position to judge credibility and weight, we show great deference to the trial court's determination of voluntariness." *State v. Pickar*, 453 N.W.2d 783, 785 (N.D.1990); *State v. Discoe*, 334 N.W.2d 466, 468 (N.D. 1983). This court does not conduct a de novo review. *Discoe*, 334 N.W.2d at 470. We will reverse only if the trial court's decision is contrary to the manifest weight of the evidence. *Pickar*, 453 N.W.2d at 785; *State v. Newnam*, 409 N.W.2d 79, 84 (N.D.1987); *Discoe*, 334 N.W.2d at 468.

■ An involuntary confession violates the Fifth Amendment's protection against compelled self-incrimination. *United States v. Carignan*, 342 U.S. 36, 41, 72 S.Ct. 97, 100, 96 L.Ed. 48 (1951). The Fifth Amendment protection against compelled self-incrimination is made applicable to the states by the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653 (1964); *State v. Metzner*, 244 N.W.2d 215, 223 (N.D.1976). We summarized the law of voluntariness in *State v. Pickar*, 453 N.W.2d 783, 785 (N.D. 1990):

"A confession is voluntary if it is the product of the defendant's free choice rather than the product of coercion. *See Discoe, supra* at 467. Voluntariness is determined by examining the totality of the circumstances surrounding the confession. *Blackburn v. Alabama*, 361 U.S. 199, 206, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960); *Discoe, supra*, 334 N.W.2d at 467. The inquiry focuses on two elements: (1) the characteristics and condition of the accused at the time of the confession and (2) the details of the setting in which the confession was obtained. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Discoe, supra*, 334 N.W.2d at 467–68. No one factor is determinative. *Schneckloth, supra; Discoe, supra*, 334 N.W.2d at 468." *Id.*

A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given. *Schneckloth*, 412 U.S. at 225–26, 93 S.Ct. at 2046–47; *see also Arizona v. Fulminante*, —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) [conclusion that defendant's will was overborne in a way rendering confession product of coercion supported by finding of credible threat of violence].

Of the relevant factors related to the characteristics of the accused, the district court emphasized the defendant's educational level and mental condition. The district court found that Taillon was a twenty-eight-year-old male with "apparent below average intelligence" as evidenced by his ninth grade education. It also found that during the interview, Taillon ex-

pressed considerable anxiety over his pregnant wife's reaction to his involvement in the murder investigation.

The district court also closely scrutinized the conduct of the investigator, recognizing its importance in evaluating voluntariness. *See Pickar, supra.* The traditional indices of coercive police conduct include the duration and conditions of detention, the attitude of the police toward the defendant and the diverse pressures which sap the accused's powers of resistance or self-control. *Pickar,* 453 N.W.2d at 786; *Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987).

The investigator questioned Taillon for approximately one hour and fifteen minutes. During that time, Taillon was placed in a small interrogation room with his back against the wall, the door closed and the investigator two feet away. "In short ..." the district court concluded, "the physical arrangement in the room was such that the defendant was 'boxed in.'"

Taillon expressed his concern over his family's reaction. The investigator made frequent assurances, sometimes as a prod when Taillon hesitated, that his family would understand. The investigator repeatedly said he knew Taillon had a problem and that Taillon would feel better once he told the truth. The investigator spoke of the inevitability of discovery, saying "You're gonna have to tell me. You're holding back. You can't live with this. We're still going to find out."

The trial court concluded that "[t]hroughout the course of the interrogation, the Defendant was repeatedly assured" that the officer wanted to help him, that the defendant was repeatedly told he was lying, that "[t]he questioning proceeded through ... stages of ... suggesting scenarios to the Defendant, and using extreme sympathy and paternalism as a means of encouraging the Defendant to continue on with the interrogation despite his assertions of the Fifth Amendment rights of which he had been advised at the outset."

As the trial court's opinion indicates, the trial court weighed the facts that the investigator advised Taillon of his *Miranda* rights but when Taillon invoked his right to end the interview and, later, his right to an attorney, his invocations were disregarded. The State argues that because Taillon was not in custody, the *Miranda* warnings need not have been given. That they were given and disregarded, is irrelevant, argues the State. Taillon responds that once *Miranda* warnings were given, any indication that he wished to remain silent, required the cessation of all questioning. We reject the excessiveness of both positions.

The *Miranda* advisory is required only when an individual is subject to custodial interrogation. *E.g., California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). Here, it is undisputed and the trial court so found, that Taillon was not in custody for purposes of the *Miranda* advisory at the outset of the interrogation when the *Miranda* warnings were given. So, the question is of what effect is giving *Miranda* warnings in a noncustodial interrogation. The Fourth Circuit Court of Appeals has concluded that the giving of *Miranda* warnings in a noncustodial setting does not by itself automatically disable police from continuing to question a suspect who asserts his *Miranda* right to silence. *Davis v. Allsbrooks,* 778 F.2d 168, 172 (4th Cir.1985). We believe that the absolute per se rule espoused by Taillon that *Miranda* warnings once given must be honored even though not required to have been given, "would operate as a substantial disincentive to police to inform suspects of their constitutional protections." *Id.* But we do not believe that *Miranda* warnings once given, albeit gratuitously, are wholly irrelevant. The giving of *Miranda* warnings and the accused's reliance on the rights described in the warnings are relevant factors in evaluating the voluntariness of any incriminating statements. *Cf. Davis,* 778 F.2d at 170–172; *United States v. Kampiles,* 609 F.2d 1233 (7th Cir.1979).

The district court found it was the investigator who kept the conversation going through Taillon's hesitations and Tail-

lon's attempts to stop the interview and to secure an attorney. The court reasoned that the investigator's prodding Taillon to continue the interview after he had indicated he wanted to end the session amounted to psychological coercion. In particular, the district court noted "the fact that there was no meaningful break in the interview after the invocation of the right to silence (nor later after the request for an attorney)." The district court did not err in considering the impact of the *Miranda* warnings on the voluntariness of Taillon's incriminating statements. The court blended together evidence of coerciveness with the *Miranda* warnings to find, from the totality of these circumstances, that Taillon's statements were not voluntarily given. The trial court did not find any one factor determinative, rather, it found that the totality of the circumstances, in effect, overbore Taillon's will at the time he gave the incriminating statements.

The State seeks to distinguish this case from *Pickar* and *Discoe*, cases in which we affirmed findings of involuntariness. The State contends that the investigator's sympathetic attitude and persistent prodding of Taillon to talk were legitimate interrogation tactics. It also contends that Taillon has sufficient intelligence to have made a free choice to waive his right against self-incrimination. And, the State contends that the interview room was an appropriate setting for Taillon's questioning.

The State is simply objecting to the weight given by the trial court to the circumstances surrounding Taillon's incriminating statements. Trial courts are in the business of judging credibility of witnesses and weighing evidence. This court is in the business of assuring that a decision by the trial court complies with relevant legal principles. Our system works best when we honor that division of labor. Illustrative of our articulation of that principle is our statement in *State v. Discoe*, 334 N.W.2d at 470: "[W]e must be willing to affirm the decision of the trial court [on the issue of voluntariness] if there is evidence in the record to support it even though ... our determination would be different...." We will overturn a determination of invol-

untariness only if it is against the manifest weight of the evidence, or if under the totality of the circumstances, the determination is wrong as a matter of law. In this case, we cannot say that the determination was against the manifest weight of the evidence, or that, under the totality of the circumstances, the statements were voluntary as a matter of law.

Accordingly, we affirm the suppression order.

ERICKSTAD, C.J., and GIERKE, VANDE WALLE and MESCHKE, JJ., concur.