**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Jason SAILER, Defendant and Appellee.**

Cr. No. 920321.

Supreme Court of North Dakota.

May 26, 1993.

Charles R. Isakson (argued), State's Atty., Stanton, for plaintiff and appellant.

Albert A. Wolf (argued), Wheeler Wolf, Bismarck, for defendant and appellee.

NEUMANN, Justice.

The State appeals from an order[1] entered by the Mercer County Court sup-

---

1. Sailer argues that the State cannot bring this appeal. He concedes that a suppression order may be appealed, but disputes the veracity of the prosecutor's affidavit stating that prosecution of the crime without the suppressed admissions would be futile. Futility, however, is no longer the applicable standard. Section 29-28-07, N.D.C.C., lists the things from which the State may appeal in a criminal action. As amended in 1985, subsection 5 of the statute now allows the State to appeal from an order "suppressing a confession or admission, when

pressing admissions given by Jason Sailer, who was charged with delivery of alcoholic beverages to a minor person under Section 5–01–09, N.D.C.C. We affirm.

On April 24, 1992, Rodney Psyck, a minor from Hazen, was killed in a motorcycle accident. Evidence suggested that alcohol was a factor in the accident, and the Hazen Police Department began investigating. Hazen Police Officer James Woodward received information that Jason Sailer, age 21 at the time of the accident, might have been involved in providing Psyck and other minors with alcohol on the evening in question. On April 25, 1992, Woodward contacted Sailer and asked him to come to the Hazen Police Department and talk with Woodward about the matter. There is no dispute that Sailer was verbally advised of his *Miranda* rights [2] before questioning began. The interview lasted less than one-half hour, and resulted in some admissions by Sailer. The next day, Sailer, of his own volition, initiated contact with Woodward, providing him with additional information about the incident. On April 27, Sailer contacted Woodward once more, and this time the conversation between the two was tape-recorded at Woodward's insistence. Sailer was verbally given his *Miranda* rights again, and his admissions followed. Then, on April 30, Hazen Chief of Police Kathy Berg requested a meeting with Sailer at the Hazen Police Department. She informed him of the nature of the charge to be filed against him, and he repeated his earlier admissions to her.

Following the entry of a formal complaint against Sailer, charging him with delivery of alcoholic beverages to a minor person, Section 5–01–09, N.D.C.C., he brought a motion to suppress his admissions given to Woodward and Berg, including the tape-recorded conversation. At the hearing on the motion to suppress, Sailer introduced evidence of his diminished mental capacity and inability to understand and communicate. Witnesses included Sailer, his former girlfriend, Tracy Burkhardsmeier, and his mother and father, Eldora and Levi Sailer. He also introduced school records and evaluations. At the hearing, Sailer elicited evidence which suggested that he had been a slow learner all of his life, and that he fell significantly behind those in his own age group. He had a tendency to be cooperative, even when he did not understand what was happening, because he did not want to appear ignorant. For instance, Burkhardsmeier testified that Sailer had expressed to her that he did not understand his rights. He thought he could only have an attorney present in court, after the charge had been brought against him. He did not understand that he was entitled to have an attorney present during the interviews with the police. Furthermore, he told Burkhardsmeier that when he was told he was entitled to have "counsel" present, he thought that meant "counselor," as in a school or addiction counselor.

Sailer also offered evidence at the suppression hearing concerning the conduct of the police. Sailer asserted that he was led to believe that if he cooperated, the judge and prosecutor would be more lenient on him, and that he would receive some type of deal. He claimed that the police made him think, at the time of his admissions, that they already had enough evidence to convict him, and that if he merely cooperated, he would not be in as much trouble. He also stated that the police promised him that the tape-recorded conversation would not be heard by anyone except the police and the prosecutor.

At the motion hearing, Sailer contended that it was a combination of these two factors, his diminished capacity to under-

accompanied by a statement of the prosecuting attorney asserting that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." There is no question that the statements suppressed in this case, if admissible, would be substantial proof of material facts.

2. "Prior to any questioning [in a custodial setting], the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

stand and comprehend, and the inducements offered to him by the police, which fused together in motivating him to make his admissions. Sailer argued that, as a result of these two factors, his admissions were involuntary and must be suppressed.

The State countered Sailer's arguments by pointing out that it never appeared to the officers that Sailer was unaware of what was happening. He stated to them, on more than one occasion, that he understood his rights. There was never any indication to Woodward or Berg that Sailer had a lesser mental capacity, that he had problems understanding and comprehending, or that he misunderstood the rights given him. At the motion hearing both Berg and Woodward testified, as did Carla Atwood, Sailer's special education teacher for English. Atwood stated that Sailer had a learning disability which affected his reading ability, but not his aural comprehension. The State further asserted that requiring law enforcement officers to question defendants *ad nauseam* about whether they understand their rights and whether they fully comprehend those rights would place an undue burden on law enforcement officials. The State also contended that the conduct of the police was not a factor in Sailer's admissions because they had done nothing improper, and should not be considered in determining whether Sailer's admissions were voluntary.

Immediately following the hearing, the county court made an oral determination that the admissions should be suppressed on the basis of the combination of Sailer's lesser mental capacity and the inducements offered by the police. The court stated that it reached its decision to suppress by utilizing the "totality of the circumstances" standard. The court said that it considered the following factors:

"[T]he age, experience, education, background, intelligence, ability to understand [the] Miranda warning, the defendant's voluntariness, the possibility of fright, despair, the prolonged or short nature of questioning, the setting in which the confession was obtained, confession by suggestion, the defendant's

stability, as to whether or not there was an unusual desire to patronize to obtain friends, as to whether or not he had an inferiority complex, his desire to escape punishment, as to whether his testimony and that of his parents were self-serving[,] as to whether or not in the volume of desire to get off easily for fear of punishment, his vacillation, going from an alleged perpetrator and skipping to that of a police informer, the characteristic condition of the accused at the time of confession, the details of the setting of the confession, and the free will of the defendant."

The subsequent written order of the court also reflected that the combination of the two factors (lesser mental capacity and police inducements) was responsible for the suppression order. The State filed a timely appeal of this order, arguing that there is no evidence of involuntariness in the record.

█ The State's burden in this type of case is very demanding, and is one which was not met on the present facts. As we explained in *State v. Taillon*, 470 N.W.2d 226 (N.D.1991):

" 'Because voluntariness of a confession depends upon questions of fact to be resolved by the trial court, and because the trial court is in a superior position to judge credibility and weight, we show great deference to the trial court's determination of voluntariness.' *State v. Pickar*, 453 N.W.2d 783, 785 (N.D.1990); *State v. Discoe*, 334 N.W.2d 466, 468 (N.D.1983). This court does not conduct a de novo review. *Discoe*, 334 N.W.2d at 470. We will reverse only if the trial court's decision is contrary to the manifest weight of the evidence. *Pickar*, 453 N.W.2d at 785; *State v. Newnam*, 409 N.W.2d 79, 84 (N.D.1987); *Discoe*, 334 N.W.2d at 468."

*Id.* at 228. "Manifest weight of the evidence" is a substantial burden, and we give the trial court great deference when utilizing this standard of review.

We see no need to offer a lengthy discourse on the background of legal princi-

ples used to determine the voluntariness of an admission or confession. If we attempted to do so, we would merely be lifting the text from *State v. Taillon,* 470 N.W.2d 226, *State v. Pickar,* 453 N.W.2d 783 (N.D. 1990), and *State v. Discoe,* 334 N.W.2d 466 (N.D.1983), and placing those words here. We view such a repetitive gesture as unnecessary, and suggest the reader turn to those opinions for a thorough analysis of the subject matter. We only point out that, under the standard of review we must use in this case, we find no error in the county court's suppression of Sailer's admissions.

The trial court, as it was required to do, focused on the two elements used to determine whether a confession or admission is voluntary: "(1) the characteristics and condition of the accused at the time of the confession and (2) the details of the setting in which the confession was obtained." *State v. Taillon,* 470 N.W.2d at 228 (quoting *State v. Pickar,* 453 N.W.2d at 785). The county court determined that the combination of Sailer's lesser mental capacity and the inducements offered by the police resulted in involuntary admissions by Sailer. Had the county court only focused on one or the other, to the exclusion of all else, we might have reached a different conclusion here. Lesser mental capacity alone, or inducements by the police alone, on these facts, would have been insufficient to warrant suppression of the admissions. However, the county court did not make that error, and it suppressed the admissions because of a combination of both factors.

For these reasons, and in light of our decisions in *Taillon, Pickar,* and *Discoe,* we affirm the order of the Mercer County Court suppressing all admissions given by Sailer.

VANDE WALLE, C.J., and LEVINE, MESCHKE and SANDSTROM, JJ., concur.