IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 16, 2000 Session

## STATE OF TENNESSEE v. TIMOTHY WALTON

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Dyer County**
**No. C97-205    R. Lee Moore, Jr., Judge**

---

**No. W1998-00329-SC-R11-CD - Filed March 15, 2001**

---

ADOLPHO A. BIRCH, JR., J., concurring and dissenting.

I agree with the majority that the State violated the requirements of Miranda v. Arizona by subjecting Walton to custodial interrogation without informing him of his Constitutional rights. See generally 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Thus, I concur in the conclusion that Walton's incriminating statements should be suppressed. The majority fails, however, to take the next logical step, which would be to suppress also the physical evidence obtained as a direct result of the Miranda violation. Because this failure constitutes, in my opinion, a gross incursion upon the letter and spirit of Miranda and tends to invite open defiance and disregard of the Miranda doctrine by those bound to respect it, I must respectfully dissent.

As conceded by the majority, the issue whether physical evidence should be suppressed if discovered by means of a Miranda violation has never been directly addressed by the United States Supreme Court or by this Court. Majority opn. at 23, 32. Nevertheless, despite the absence of clear precedent, the majority concludes that "the clear trend under the federal constitution" is to admit physical evidence obtained in violation of Miranda. Id. at 29. The authorities relied upon by the majority, however, provide questionable support for the rule it has established. Michigan v. Tucker recognized that a defendant could not suppress the testimony of a state witness whose identity was disclosed through statements made by the defendant during a custodial interrogation in violation of Miranda. See generally Tucker, 417 U.S. 433, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974). Live witnesses, however, always have been treated differently than inanimate evidence, even under the broader exclusionary rule jurisprudence of the Fourth Amendment. See, e.g., United States v. Ceccolini, 435 U.S. 268, 280, 98 S. Ct. 1054, 1062, 55 L. Ed. 2d 182 (1974) (holding that the Fourth Amendment exclusionary rule "should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support suppression of an inanimate object"). Likewise, the focus of Oregon v. Elstad was whether a suspect's voluntary confession was "tainted" by an earlier, improper confession obtained in violation of Miranda. See generally Elstad, 470 U.S. 298, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985). This is a proposition clearly distinguishable from the question whether evidence should be admitted when it was obtained as a direct result of the Miranda violation itself.

And in <u>Rice v. State</u>, the principal Tennessee authority cited by the majority, the confession of the prisoner was induced by false promises that he would not be prosecuted, and that he would be given money, were he to confess his crimes. 50 Tenn. (3 Heisk.) 215 (Tenn. 1871). The greater weight of authority, however, suggests that promises of leniency or money such as were offered in <u>Rice</u> overbear the accused's free will sufficiently that a confession induced by such means should be viewed as a product of coercion. <u>See, e.g.</u>, <u>United States v. Rogers</u>, 906 F.2d 189 (5th Cir. 1990); <u>Sossamon v. State</u>, 816 S.W.2d 340 (Tex. Crim. App. 1991); <u>State v. Pickar</u>, 453 N.W.2d 783 (N.D. 1990); <u>State v. Hanson</u>, 382 S.E.2d 547 (W. Va. 1989); <u>Walker v. State</u>, 233 N.E.2d 483 (Ind. 1968); <u>State v. Ely</u>, 390 P.2d 348 (Or. 1964); <u>cf. also</u> <u>Arizona v. Fulminate</u>, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (stating that promises that induce a confession may constitute coercion when the circumstances surrounding the promise are "sufficiently compelling to overbear the suspect's will in light of . . . [those] circumstances"). Thus, it appears that the physical evidence which was admitted in <u>Rice</u> would likely be suppressed under the majority's own analysis, since the physical fruits of a coerced confession would not be admissible even under the standard it proposes. Accordingly, <u>Rice</u> lends little weight to the majority's argument that physical fruits of a <u>Miranda</u> violation should be admissible as evidence.

The better method, in my view, for determining whether physical fruits of a <u>Miranda</u> violation should be suppressed would be to consider the interests served by <u>Miranda</u>'s exclusionary rule and determine whether those interests would be advanced by applying the rule to physical evidence. The right protected by <u>Miranda</u> is the Fifth Amendment right against self-incrimination, which prohibits the State from compelling a defendant "in any criminal case to be a witness against himself." U.S. Const. amend. V; <u>Miranda v. Arizona</u>, 384 U.S. at 439, 86 S. Ct. at 1609. That same right against self-incrimination is also protected by Article I, section 9 of the Tennessee Constitution, which this Court regards as even "broader and more protective of individual rights" than the Fifth Amendment. <u>See</u> <u>State v. Crump</u>, 834 S.W.2d 265, 268 (Tenn. 1992). With its holding in <u>Miranda</u>, the United States Supreme Court responded to the advent of modern custodial police interrogation techniques, which "brought with it an increased concern about confessions obtained by coercion." <u>Dickerson v. United States</u>, 530 U.S. 428, ___, 120 S. Ct. 2326, 2331, 147 L. Ed. 2d 405 (2000); <u>Miranda</u>, 384 U.S. at 445-58, 86 S. Ct. at 1612-19. The <u>Miranda</u> Court acknowledged that police interrogation, by its very character, subjects the accused to formidable pressure and isolation, and it concluded that "[e]ven without employing brutality, the 'third degree' or [other] specific stratagems . . . the very fact of custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals." 384 U.S. at 455, 86 S. Ct. at 1617-18. As noted by the Court in a subsequent case upholding <u>Miranda</u>, "the coercion inherent in custodial interrogation <u>blurs the line between voluntary and involuntary statements,</u> and thus heightens the risk that an individual will not be 'accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself.'" <u>Dickerson</u>, 530 U.S. at ___, 120 S. Ct. at 2331 (quoting <u>Miranda</u>, 384 U.S. at 439, 86 S. Ct. at 1609) (emphasis added).

Thus, the Court fashioned the requirements of <u>Miranda</u> in response to the necessity for procedural safeguards which might provide a "fully effective means . . . to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it." <u>Miranda</u>, 384 U.S.

at 444, 86 S. Ct. at 1602; see also Illinois v. Perkins, 496 U.S. 292, 296, 110 S. Ct. 2394, 110 L. Ed. 2d 243 (1990) (describing Miranda's requirements as resting on "the Fifth Amendment privilege against self incrimination").  Because the lines between voluntary confession and impermissible coercion often blur during custodial interrogation, the Court found it essential that the traditional totality-of-the-circumstances test for voluntariness be expanded, and thus the Miranda Court crafted a "prophylactic" rule in order to insulate and fully protect the rights of the accused.  Cf. Withrow v. Williams, 507 U.S. 680, 691, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993) (commenting that "[p]rophylactic though it may be, in protecting a defendant's . . . privilege against self-incrimination, Miranda safeguards a 'fundamental trial right'").  As pointed out in Dickerson, "the [Miranda] Court noted that reliance on the traditional totality-of-the-circumstances test raised a risk of overlooking [a coerced] custodial confession, . . . a risk that the Court found unacceptably great when the confession is offered in the case in chief to prove guilt."  Dickerson, 530 U.S. at ___, 120 S. Ct. at 2335.

The rule embraced by the majority, which, when implemented would suppress the physical fruits of a Miranda violation only when the statements leading to the discovery of the evidence were coerced, is inappropriate for the very reasons that the Miranda requirements were established.  The majority's rule assumes that a totality-of-the-circumstances test is sufficient for determining whether statements leading to the discovery of physical evidence, made during a custodial interrogation, were voluntarily made.  As recognized in Miranda, however, the totality-of-the-circumstances analysis fails to fully protect the accused from violation of the Fifth Amendment privilege precisely because it is exceedingly difficult to discern where a statement divulged during a custodial interrogation lies on the already blurred line between voluntariness and coercion.  384 U.S. at 455, 86 S. Ct. at 1617-18.  If it were practicable for reviewing courts to determine through a simple totality-of-the-circumstances analysis whether statements made during custodial interrogation were coerced, there would be no need for Miranda.  Under the majority's analysis, the risk that physical evidence will be admitted erroneously when, in actuality, that evidence has been obtained through unconstitutional coercion, is too great.

The requirements of Miranda acknowledge that the right against compelled self-incrimination must be broadly insulated if the rights of the accused are to be adequately protected.  If this goal is to be accomplished, Miranda's exclusionary rule must be applied in a manner which ensures that police are deterred from violating the accused's Fifth Amendment rights.  Cf. Collazo v. Estelle, 940 F.2d 411 (9th Cir. 1991) (noting that the due process exclusionary rule for confessions is intended, at least in part, to deter improper police conduct).  Clearly, then, the goals of Miranda are advanced if police are prevented from using physical evidence they obtain from a Miranda violation, for this should deter them from violating the rules therein established.

That police will not be deterred from violating a suspect's Miranda rights if physical fruits of those violations are allowed in evidence is not idle speculation.  Recently, scholars have documented the development of the relatively new police practice of "questioning outside Miranda." See Joshua Dressler and George C. Thomas III, Criminal Procedure:  Principles, Policies, and Perspectives at 605 (1999); Charles D. Weisselberg, Saving Miranda, 84 Cornell L. Rev. 109 (1998).

-3-

According to these commentators, police subscribing to this practice deliberately interrogate suspects without informing them of their Miranda rights, sometimes even telling them that the statements they make "outside Miranda" cannot be used against them. See Dressler and Thomas, supra, at 605, Weisselberg, supra, at 160. One California police training video goes so far as to instruct police officers that "[w]hen you violate Miranda, you're not violating the Constitution. Miranda is not the Constitution. It's a court-created decision that affects the admissibility of testimonial evidence and that's all it is. So you don't violate any law. You don't violate the Constitution." Weisselberg, supra, at 110 (quoting Training Videotape, Questioning: "Outside Miranda" (Greg Gulen Productions 1990)). While no one knows how prevalent the practice of questioning "outside Miranda" may be, there is no doubt that inherent in such questioning lies an increased risk that violence will be done to the constitutional rights of the accused. As stated by Weisselberg:

> [T]he new vision transforms Miranda from a decision that protects a suspect into a new and aggressive tool for law enforcement. Under this practice, officers comply with the warning requirements of Miranda, but then represent that the suspect's assertion of rights makes a full statement perfectly safe. Of course, given the current use of the statements to impeach and to discover other evidence, the officers' assurances at best mislead the suspect and at worst directly deceive him or her regarding the true state of the law.

Weisselberg, supra, at 161-62. It is difficult to deny that allowing the physical fruits of a Miranda violation to be used as evidence greatly encourages this questionable practice. Such a result should be unacceptable, particularly given this Court's claims that the Tennessee Constitution affords this State's citizens even greater protection of individual liberties than is guaranteed by the federal Constitution.

For the foregoing reasons, I would hold that physical evidence which is discovered as a direct result of a Miranda violation should be suppressed. The majority's decision to allow such evidence fails to further the objectives upon which the Miranda decision was based, and it fails to deter police violations of the accused's Miranda rights. Accordingly, I dissent.

_____
ADOLPHO A. BIRCH, JR., JUSTICE