2008 ND 174

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Matthew John CRABTREE, Defendant and Appellant.**

**No. 20070280.**

Supreme Court of North Dakota.

Sept. 23, 2008.

Cynthia Mae Feland (argued), Assistant State's Attorney; and Julie A. Lawyer (on brief), Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Thomas M. Tuntland, Mandan, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1]   Matthew Crabtree appeals from a criminal judgment entered upon his conditional guilty plea to gross sexual imposition after the district court denied his motion to suppress evidence.   Because we conclude Crabtree was not compelled to provide his probation officer information that resulted in the charges in this case, we conclude the district court did not err in denying Crabtree's suppression motion, and we affirm the judgment.

I

[¶ 2]   In September 2001, Crabtree pled guilty to two felony charges of delivery of a controlled substance, and to misdemeanor charges of delivery of alcohol to minors, corruption or solicitation of a minor, and possession of drug paraphernalia.   After serving time in jail and while subsequently on probation, Crabtree began dating his future wife.

[¶ 3]   In the summer of 2006, his future wife became pregnant, and she and Crabtree were married.   Prior to the child's birth, Crabtree contacted his probation officer, Brian Weigel, seeking to change a condition of his probation, which prevented him from having contact with minors, to permit him to continue living with his wife once their child was born.   Weigel testified that in order for him to support Crabtree's request, Crabtree would need to complete a sex offender disclosure questionnaire and submit to a polygraph examination.   On appeal, the parties do not dispute that Crabtree's probation conditions did not require him to submit to a polygraph examination, but that his prior parole conditions did require him to submit to an examination.   The parties also do not dispute Crabtree had actually completed his parole while still in prison on other charges and was released from prison only on probation.   Nonetheless, both Crabtree and Weigel were under the impression that submission to a polygraph examination was a continuing requirement.

[¶ 4]   In August 2006, Weigel requested that Crabtree answer a sex offender disclosure questionnaire.   The questionnaire stated that all questions related to behavior occurring before the date of the last

conviction for a sexual offense and stated that it was not seeking identifying information about victims. However, the questionnaire also stated, "SHOULD YOU REPORT IDENTIFYING INFORMATION ABOUT THESE VICTIMS ANYWAY, THIS INFORMATION WILL BE REPORTED TO CHILD PROTECTIVE SERVICES AS REQUIRED BY STATE LAW." Weigel informed Crabtree that a polygraph examination would be conducted regarding his answers, and after receiving this information, they would meet with sex offender treatment providers at West Central Human Services. Crabtree completed the questionnaire, and on August 22, 2006, submitted to the polygraph examination.

[¶ 5] Before the polygraph examination, however, Weigel and Crabtree went over Crabtree's answers to the questionnaire. Under a section entitled "treatment issues," there was a question asking Crabtree to list everyone with whom he had any sexual contact or relationship. Weigel testified he also added that the list should include everyone within the last five years. Crabtree listed the first names of two women and listed "an acquaintance." Weigel asked Crabtree what the name of the acquaintance was, and Crabtree stated he only knew the girl by her first name, which he provided to Weigel. Weigel did not ask Crabtree for the acquaintance's age. During the course of the examination, however, Crabtree admitted to the polygraph examiner that he had had sexual intercourse with a girl who Crabtree believed was an adult, but later found out was 15 or 16 years of age.

[¶ 6] In September 2006, Weigel, in addition to a representative from West Central Human Services, met with Crabtree about the results of the polygraph, indicating they needed more information regarding his sexual contact with the minor girl to support unrestricted contact with his child. During this meeting, Crabtree revealed additional information. Crabtree provided the name of a friend from work, also a minor, who introduced him to the girl. Crabtree said that the relationship occurred in March 2006 and the girl had told him she was 19, but that he ended the relationship when she later told him she was 15.

[¶ 7] Weigel then conducted further investigation, eventually discovering the identity of the minor girl. After meeting with the minor girl and her step-father, Weigel learned that Crabtree had sexual intercourse with the girl in March 2006, and that the girl was 14 years old at the time of the sexual encounters. The minor girl also indicated that she had told Crabtree she was 15 when he first asked.

[¶ 8] In September 2006, Crabtree was charged with gross sexual imposition, a class AA felony, for engaging in a sexual act with a minor less than 15 years old. In January 2007, Crabtree moved to suppress statements he made in connection with the polygraph examination and all evidence derived therefrom, including hand-written answers to the sex offender disclosure questionnaire. After a hearing, the court denied Crabtree's motion, and he entered a conditional guilty plea to the charge under N.D.R.Crim.P. 11.

II

[¶ 9] Crabtree claims he was compelled to provide information to his probation officer and argues the district court erred in denying his motion to suppress that evidence. This Court's standard for reviewing a district court's decision on a motion to suppress is well-established:

> When reviewing a district court's ruling on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of

affirmance. We recognize that the district court is in a superior position to assess the credibility of witnesses and weigh the evidence. Generally, a district court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the district court's findings, and if its decision is not contrary to the manifest weight of the evidence. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Goebel,* 2007 ND 4, ¶ 11, 725 N.W.2d 578 (citations omitted). *See also State v. Albaugh,* 2007 ND 86, ¶ 8, 732 N.W.2d 712.

### III

■ [¶ 10] Crabtree contends that his disclosure of incriminating information to his probation officer was compelled in violation of his right against self-incrimination under U.S. Const. amend. V and N.D. Const. art. I, § 12. Crabtree asserts he was "compelled" because both he and his probation officer believed that his refusal to provide information would result in revocation of his probation and because Crabtree feared probation revocation would result from his refusal to answer Weigel's questions.

■ [¶ 11] The Fifth Amendment, applicable to the states through the Fourteenth Amendment, states: "No person . . . shall be compelled, in any criminal case, to be a witness against himself. . . ." U.S. Const. amend. V; *see also* N.D. Const. art. I, § 12 ("No person shall . . . be compelled in any criminal case to be a witness against himself. . . ."). In order to claim the privilege against self-incrimination, a witness must properly assert the privilege. *See State v. Faul,* 300 N.W.2d 827, 829 (N.D.1980). In this case, it is undisputed that Crabtree did not assert his privilege against self-incrimination, and the issue is whether he voluntarily provided the information to Weigel. He nevertheless asserts the use of his statements violate due process.

■ [¶ 12] "When a confession is challenged on due process grounds, the ultimate inquiry is whether the confession was voluntary." *Goebel,* 2007 ND 4, ¶ 16, 725 N.W.2d 578; *see also State v. Norrid,* 2000 ND 112, ¶ 18, 611 N.W.2d 866. A confession is voluntary if it is the product of the defendant's free choice, rather than the product of coercion. *Goebel,* at ¶ 16; *State v. Pickar,* 453 N.W.2d 783, 785 (N.D. 1990). "Voluntariness is determined by examining the totality of the circumstances surrounding the confession." *Pickar,* 453 N.W.2d at 785 (citing *Blackburn v. Alabama,* 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *State v. Discoe,* 334 N.W.2d 466, 467 (N.D.1983)). A voluntariness inquiry focuses on two elements: "(1) the characteristics and condition of the accused at the time of the confession and (2) the details of the setting in which the confession was obtained." *Pickar,* 453 N.W.2d at 785 (citing *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Discoe,* 334 N.W.2d at 467–68); *see also Goebel,* 2007 ND 4, ¶ 16, 725 N.W.2d 578; *State v. Syvertson,* 1999 ND 134, ¶ 20, 597 N.W.2d 652. No single factor is determinative. *See Pickar,* 453 N.W.2d at 785.

■ [¶ 13] The voluntariness of a confession depends upon questions of fact to be resolved by the district court. *Pickar,* 453 N.W.2d at 785. Because the district court is in a superior position to judge credibility and weight, we give great deference to a district court's determination of voluntariness. *Id.; Discoe,* 334 N.W.2d at

468; *see also Goebel,* 2007 ND 4, ¶ 17, 725 N.W.2d 578. We do not conduct a de novo review; rather, we will reverse a district court's determination on voluntariness only if the court's decision is contrary to the manifest weight of the evidence. *Goebel,* 2007 ND 4, ¶ 17, 725 N.W.2d 578; *State v. Sailer,* 500 N.W.2d 886, 888 (N.D.1993); *Pickar,* 453 N.W.2d at 785.

[¶ 14] Here, in denying Crabtree's motion to suppress evidence, the district court explained:

There were two occasions during which Mr. Crabtree was asked questions which could lead to the identity of the victim. The first was on August 22, 2006, when he completed the questionnaire, met with Brian Weigel and took the polygraph. The second being the probation meeting on September 7, 2006, where Mr. Crabtree provided the clues to identifying [the minor victim.]

Addressing the issue of compulsion in regard to the information obtained from the questionnaire and the polygraph, the State argues that the questionnaire and polygraph were completed at the request of Mr. Crabtree and he consented to providing the information and therefore was not compelled to do so and can raise no Fifth Amendment claim of compulsion. The Court agrees.

Addressing the September 7, 2006 date, the State argues that Mr. Crabtree was not in custody at the time, and therefore, he was free to refuse to answer or to leave as he wished, and that his decision to answer the questions anyway without invoking his 5th Amendment right is a waiver of that right.

Mr. Crabtree is claiming that he was compelled to provide the identifying information when asked by his probation officer because he believed that failure to do so would result in revocation of his probation.

Mr. Crabtree was told the September 7, 2006 meeting was to discuss the appropriate treatment that could lead to his ability to be with his family. However, it is clear from Mr. Weigel's notes, that by the time the September 7, 2006 meeting was arranged, he had been putting off meeting with Mr. Crabtree about Mr. Crabtree's request to modify the current conditions of his bond [sic] was instead, actively investigating the new charge. . . .

Mr. Weigel anticipated that he would obtain incriminating information from [Crabtree] during this meeting and consciously sought incriminating evidence under the subterfuge of promoting a sexual offense treatment program that would help rehabilitate Mr. Crabtree.

Mr. Crabtree was definitely in an uncomfortable position, in that he wanted to appease his probation officer in order to be able to continue to live with his wife after his child was born, and he did not want to incriminate himself by providing additional information regarding a sexual encounter with a[ ] minor.

The 5th Amendment does not protect Mr. Crabtree from being placed in an uncomfortable position, or from making difficult choices between providing incriminating information or losing some benefit (probation) or not receiving anticipated benefits (being able to live with his wife). Silence may have some consequences, but those consequences do not necessarily amount to compulsion. Likewise, the [federal and state] Constitutions do[ ] not prohibit Mr. Weigel from asking incriminating questions, he simply cannot compel the response.

When Mr. Crabtree was asked the difficult questions, he was not in custody, he was free to invoke his 5th Amendment right and remain silent, or free to leave, he chose to do neither. Instead,

he voluntarily provided the answers to the questions Mr. Weigel asked. This is not a violation of his Fifth Amendment Right[.]

The Court is not convinced that Mr. Crabtree was compelled to incriminate himself on the new crime. He could have invoked his 5th Amendment right against self incrimination. He might have lost the benefits he was hoping to receive, i.e. the permission to live with his wife and newborn child, but there was no compulsion or threat made to him to require him to disclose the identity of K.R.

[¶ 15] In *Minnesota v. Murphy*, 465 U.S. 420, 425, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), the Supreme Court addressed a similar situation involving a probationer's statements to his probation officer and whether the probationer's statements without prior warnings were admissible in a subsequent criminal proceeding. In *Murphy*, the probationer pleaded guilty to a sex-related charge, was given a suspended sentence, and was placed on probation. *Id.* at 422, 104 S.Ct. 1136. The terms of his probation required, among other things, that he participate in a treatment program for sexual offenders, report to his probation officer as directed, and be truthful with the probation officer in all matters. *Id.* A counselor subsequently informed the probation officer that while in treatment, the probationer had admitted to an earlier rape and murder. *Id.* at 423, 104 S.Ct. 1136. The probation officer then arranged a meeting with the probationer, knowing in advance that the officer would report any incriminating statements. *Id.* During the course of that meeting, the probationer admitted that he committed the rape and murder and attempted to persuade the officer that further treatment was unnecessary. *Id.* at 424, 104 S.Ct. 1136. The probationer was charged with first-degree murder and thereafter sought

to suppress testimony concerning his confession on the ground that it was obtained in violation of the Fifth and Fourteenth Amendments. *Id.* at 425, 104 S.Ct. 1136.

[¶ 16] The Supreme Court recognized the general rule that a witness must ordinarily assert the privilege against self-incrimination when confronted with questions that the government should reasonably expect to elicit incriminating evidence, but the Court also discussed exceptions to that general rule. *Id.* at 429–40, 104 S.Ct. 1136. The Court specifically addressed three exceptions: 1) when confessions are obtained from suspects in police custody, 2) when assertion of the privilege is penalized so as to foreclose a free choice to remain silent and compel incriminating testimony, and 3) when exercising the privilege by failing to file a tax return developed in the context of federal occupational and excise taxes on gamblers. *Id.* Under the second exception, the probationer argued that because probation revocation was threatened if he was untruthful with his probation officer, the probationer was compelled to make discriminating disclosures instead of claiming the privilege. *Id.* at 434, 104 S.Ct. 1136. The Supreme Court rejected that argument stating:

In each of the so-called "penalty" cases, the State not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions "capable of forcing the self-incrimination which the Amendment forbids." *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 [97 S.Ct. 2132, 53 L.Ed.2d 1] (1977). In most of the cases, the attempt to override the witnesses' privilege proved unsuccessful, and the Court ruled that the State could not constitutionally make

good on its prior threat. *Lefkowitz v. Turley,* 414 U.S., [70] at 79–84 [94 S.Ct. 316, 38 L.Ed.2d 274 (1973) ]; *Sanitation Men v. Commissioner of Sanitation,* 392 U.S. 280, 283–284 [88 S.Ct. 1917, 20 L.Ed.2d 1089] (1968); *Gardner v. Broderick,* 392 U.S. 273, 278–279 [88 S.Ct. 1913, 20 L.Ed.2d 1082] (1968). These cases make clear that "a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Lefkowitz v. Cunningham, supra,* at 805 [97 S.Ct. 2132]. Occasionally, however, an individual succumbed to the pressure placed upon him, failed to assert the privilege, and disclosed incriminating information, which the State later sought to use against him in a criminal prosecution. *Garrity v. New Jersey,* 385 U.S. 493 [87 S.Ct. 616, 17 L.Ed.2d 562] (1967), was such a case, and the Court held that an individual threatened with discharge from employment for exercising the privilege had not waived it by responding to questions rather than standing on his right to remain silent. *Id.,* at 498–499 [87 S.Ct. 616].

The threat of punishment for reliance on the privilege distinguishes cases of this sort from the ordinary case in which a witness is merely required to appear and give testimony. *A State may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege.* The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts *that invocation of the privilege would lead to revocation of probation,* it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Id.* at 434–35, 104 S.Ct. 1136 (footnote omitted and emphasis added).

[¶ 17] The Supreme Court held there was no reasonable basis, under either a subjective or an objective test, for concluding the state attempted "to attach an impermissible penalty to the exercise of the privilege against self-incrimination." *Id.* at 437, 104 S.Ct. 1136. Further, there was no direct evidence that the probationer confessed because he feared his probation would be revoked if he remained silent, nor was he expressly informed during the crucial meeting with his probation officer that "an assertion of the privilege would result in the imposition of a penalty." *Id.* at 437–38, 104 S.Ct. 1136. The Court concluded that since the probationer revealed incriminating information instead of timely asserting the privilege, his disclosures were not "compelled." *Id.* at 440, 104 S.Ct. 1136. Because the probationer had not been compelled to incriminate himself, he "could not successfully invoke the privilege to prevent the information he volunteered to his probation officer from being used against him in a criminal prosecution." *Id.* Specifically, the Court in *Murphy* could not conclude the probationer was deterred from claiming the privilege "by a reasonably perceived *threat* of revocation." *Id.* at 439, 104 S.Ct. 1136 (emphasis added). We believe *Murphy* is instructive in deciding this case.

[¶ 18] Here, Crabtree primarily relies upon the second exception articulated in *Murphy*—that his assertion of the privilege would have penalized him so as to foreclose a free choice between remaining

silent and compelling incriminating testimony. The inquiry in *Murphy* focused on whether the probation conditions, i.e., answering the probation officer truthfully, required the probationer to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent. *Murphy*, 465 U.S. at 436, 104 S.Ct. 1136.

[¶ 19] While Crabtree introduced into evidence his prior parole conditions during the suppression hearing, Crabtree did not introduce the probation conditions at issue here, and instead only asked the district court to take judicial notice of the other criminal case. Neither party asserts that Crabtree's probation conditions specifically prohibited him from exercising his privilege against self-incrimination. There is no evidence in this record that Crabtree's probation officer, either implicitly or directly, threatened probation revocation if Crabtree asserted his privilege, as opposed to answering truthfully. Although Weigel testified that he "believed" failure to answer questions or submit to a polygraph would be a probation violation, there is no evidence that Weigel's belief was actually communicated to Crabtree at the time of the questionnaire, polygraph examination, or the ensuing meeting. Crabtree's own affidavit, submitted with his motion to suppress, does not say that Weigel specifically threatened him with probation revocation if he remained silent, but instead only states that Crabtree "knew" or "understood" that his probation would be revoked if he did not answer Weigel's questions or submit to the polygraph examination.

[¶ 20] Weigel's belief, expressed in his testimony after the fact, is not sufficient to demonstrate that Crabtree confessed at the time because he "reasonably feared" his probation would be revoked if he remained silent. *See Murphy*, 465 U.S. at 439, 104 S.Ct. 1136 (stating probationer could not have reasonably feared assertion of the privilege would have led to revocation in light of Court's decisions proscribing threats of penalties for the exercise of Fifth Amendment rights); *see also Johnson v. Fabian*, 735 N.W.2d 295, 306 (Minn. 2007) (summarizing *Murphy* as deciding that there was no Fifth Amendment violation, "not because the threat of additional incarceration is not compulsion, but because there was no such threat"; and further that "there was no such threat because revoking probation for assertion of the privilege would be unconstitutional"). *Compare McKune v. Lile*, 536 U.S. 24, 47–48, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (plurality) (holding adverse consequences and alterations in prisoner's prison conditions, resulting due to prisoner's failure to make admissions to participate in sexual abuse treatment program, did not constitute compulsion under the Fifth Amendment privilege against self-incrimination). It is also important to note that revocation of probation is not automatic. *See State v. Wardner*, 2006 ND 256, ¶ 18, 725 N.W.2d 215 (discussing probationer's due process rights, including opportunity for hearing, and stating that "[w]hen revocation is contested, the State need only prove a probation violation by a preponderance of the evidence. N.D.R.Crim.P. 32(f)(3)(B)."). *See also Murphy*, 465 U.S. at 438–439, 104 S.Ct. 1136 (noting probation revocation was not automatic under applicable state law, and the Court was not advised of any case in which the state had attempted to revoke probation "merely because a probationer refused to make nonimmunized disclosures concerning his own criminal conduct"). The record also indicates that Crabtree had previously had his probation revoked, and was not a stranger to this process.

[¶ 21] It is not disputed that Crabtree voluntarily sought the change in his probation condition restricting his presence

around minors to permit him to continue living with his wife after their child was born. In pursuit of this end, Crabtree asked Weigel what needed to be done. Even if Weigel and Crabtree mistakenly assumed a probation condition required Crabtree submit to polygraph examination, Crabtree nevertheless voluntarily pursued this course to have contact with his child once the child was born. Crabtree then voluntarily submitted to the questionnaire, polygraph, and subsequent interview and was not in custody when he answered Weigel's questions.

[¶ 22] Nor is there any evidence that Crabtree was specifically told by Weigel that any failure to take the polygraph or to answer a question, or by exercising his privilege against self-incrimination, would result in probation revocation. *Cf. Goebel,* 2007 ND 4, 725 N.W.2d 578 (holding confession voluntary where defendant drove himself to the police station at law enforcement's request, was interviewed in one-room police department with the door closed, but not locked, was seated next to the door, and was free to leave during the interview); *State v. Bjornson,* 531 N.W.2d 315 (N.D.1995) (implied threat of prosecution or promise of leniency by police, without more, is insufficiently coercive to render confession involuntary). According to Crabtree's affidavit, he consulted with an attorney before trying to change the conditions of his probation. The evidence indicates a contemplated choice by Crabtree rather than coercion. Crabtree was not punished, coerced, or even threatened with probation revocation, so as to excuse his failure to exercise his privilege against self-incrimination.

[¶ 23] Based upon our review of the record, Crabtree was not compelled or coerced to answer the questionnaire and submit to a polygraph examination, but instead voluntarily provided the incrimina-ting information. We cannot say that Crabtree was placed in such a position that had he asserted the privilege, he would have been penalized so as to foreclose a free choice to remain silent and compel incriminating testimony. We conclude that the district court's denial of Crabtree's suppression motion was not against the manifest weight of the evidence. We therefore hold the district court did not err in denying Crabtree's motion to suppress evidence.

### III

[¶ 24] We affirm the judgment.

[¶ 25] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.