2010 ND 134

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Troy Terrance LEHMAN, Defendant and Appellant.**

**No. 20100002.**

Supreme Court of North Dakota.

July 13, 2010.

Rehearing Denied Aug. 17, 2010.

Ryan J. Younggren, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Benjamin C. Pulkrabek, Mandan, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Troy Lehman appeals from a criminal judgment and commitment entered on a jury verdict finding him guilty of kidnapping and terrorizing. We affirm, concluding sufficient evidence exists to support the kidnapping conviction, the jury instructions adequately informed the jury of the law, and the verdicts are not legally inconsistent.

I

[¶ 2] Troy Lehman was charged with kidnapping, attempt to commit theft by deception, and terrorizing. A jury trial was held on September 22 through 24, 2009.

[¶ 3] The facts of this case are disputed. According to testimony presented at trial, Lehman had worked previously as an informant to a bail bond company. On November 7, 2008, he contacted Kurt Schienbien, a bond agent and manager of A–Affordable Bail Bonds, and told Schienbien he knew the whereabouts of Daniel Flyinghawk, an individual who had missed a court appearance after the bond company secured his bail bond. Schienbien told Lehman that he "would make sure [Lehman] was taken care of" if Lehman brought Flyinghawk to law enforcement. Schienbien arranged for Sherri Mitchell, an A–Affordable Bail Bond agent from the Detroit Lakes area to meet Lehman in Fargo. Lehman went to Flyinghawk's aunt's apartment in Fargo to apprehend Flyinghawk. Flyinghawk testified that Lehman told him he had a can of mace, told him to turn around, tied Flyinghawk's hands behind his back with a string from Flyinghawk's sweatshirt, and took him outside where Camille Lorenzen was waiting in a vehicle. Mitchell testified Lehman was angry that she would not arrive in Fargo until later in the afternoon, because he already had Flyinghawk in his custody.

Lorenzen, Flyinghawk, and Lehman drove around Fargo for approximately two hours making various stops. According to Flyinghawk, they stopped at Lorenzen's home where Lehman retrieved a knife. Flyinghawk testified he told Lehman he would match whatever price the bond company would pay in exchange for Flyinghawk's release. Flyinghawk testified that $800, two eight balls of methamphetamine, or the title to Flyinghawk's vehicle were negotiated in exchange for his release. According to Flyinghawk, they returned to his aunt's apartment to make the exchange. However, the release was not effectuated. When they arrived at Flyinghawk's aunt's apartment, a number of individuals were present, including Armando Amaya who asked for Lehman's credentials. Lehman got back into the car and told Lorenzen to "go, go, go." While driving off, Lorenzen hit Amaya with the vehicle. Amaya pulled a pistol and shot one of the vehicle's tires. Flyinghawk testified that Lehman was "freaking out" and felt he had been setup. Lehman tied Flyinghawk to the seat with a string around his neck. Flyinghawk testified Lehman threatened to "to stick [me] through the seat." Lehman instructed Lorenzen to drive Flyinghawk to law enforcement and meet Mitchell. Lehman followed in a separate vehicle. Mitchell testified that, at the law enforcement center, Lorenzen untied Flyinghawk from the car and they delivered him to law enforcement. Lehman called Mitchell requesting payment for delivering Flyinghawk. She testified he was "extremely angry," and she gave the $500 to Lorenzen. Mitchell testified that, after she gave Lorenzen the money, she spoke to Schienbien who said he had told Lehman he was not getting paid.

[¶ 4] On September 24, 2009, the jury returned a verdict finding Lehman guilty of kidnapping and terrorizing, and finding him not guilty of attempt to commit theft by deception. Lehman moved for judgment of acquittal or in the alternative a new trial. The trial court heard and denied the motion. The trial court entered a criminal judgment and commitment on the jury's verdict.

[¶ 5] On appeal, Lehman argues the trial court erred in denying his motion for judgment of acquittal on the charge of kidnapping; the trial court erred by failing to instruct the jury on a private person's authority to make an arrest; and the guilty verdict for kidnapping and not guilty verdict of attempt to commit theft by deception are legally inconsistent.

## II

[¶ 6] Lehman argues the trial court erred in denying his motion for judgment of acquittal on the charge of kidnapping.

[¶ 7] "To grant a judgment of acquittal, a court must find there is insufficient evidence to sustain a conviction." *State v. Ness*, 2009 ND 182, ¶ 11, 774 N.W.2d 254. "On appeal, this Court reviews the evidence and all reasonable inferences in the light most favorable to the verdict, and will reverse only if no rational fact finder could have found the defendant guilty beyond a reasonable doubt." *Id.* "In reviewing a question of sufficiency of the evidence under N.D.R.Crim.P. 29(a), we do not resolve conflicts in the evidence or reweigh the credibility of witnesses." *State v. Maki*, 2009 ND 123, ¶ 7, 767 N.W.2d 852 (citation omitted). "On appeal, we determine only whether there is evidence which could have allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction." *Id.* (citation omitted).

[¶ 8] Section 12.1–18–01(1), N.D.C.C., provides the elements of kidnapping: "A person is guilty of kidnapping if he abducts

another or, having abducted another, continues to restrain him with the intent to do the following: a. Hold him for ransom or reward...."

[¶ 9] To support his argument, Lehman asserts he did not abduct Flyinghawk, but rather apprehended Flyinghawk in the capacity of a bounty hunter for A–Affordable Bail Bonds. He contends the trial court did not instruct the jury on the definition of "abduct," and the State did not present any evidence to dispute he had been hired as a bounty hunter for A–Affordable Bail Bonds to apprehend Flyinghawk. Moreover, he asserts his apprehension and delivery of Flyinghawk, in his capacity of bounty hunter, were lawful and any question relating to the two hours of restraint could have been brought in a charge against him for unlawful restraint, not kidnapping.

[¶ 10] Viewing the evidence in a light most favorable to the verdict, we hold the jury was presented sufficient evidence on which it could have found Lehman guilty of kidnapping. The trial court provided the jury with instruction on the definition of both "abduct" and "restrain." Testimony revealed Lehman went to Flyinghawk's aunt's apartment, restrained Flyinghawk with a string from his sweatshirt, placed him in a car, tied him into the car, threatened him, negotiated his release, and restrained him while driving him around Fargo for two hours. Further, Flyinghawk testified that when the parties returned to Flyinghawk's aunt's apartment to exchange for his release, he could not get out of the car or unlock the doors because Lorenzen had control of the door locks. Flyinghawk also testified that Lehman threatened him with a knife and tied him to the head rest of the vehicle after the shooting. Even if Lehman was acting as a bounty hunter, based on the evidence presented, the jury could reasonably have found his actions constituted kidnapping.

III

[¶ 11] Lehman argues the trial court's failure to provide an instruction about a private person's authority to arrest infringes on his substantial rights because the trial court is required to instruct the jury on all essential elements of the law.

[¶ 12] In *Ness*, this Court explained our review of jury instructions:

We review jury instructions as a whole to determine whether they fairly and adequately advise the jury of the applicable law. A defendant is entitled to a jury instruction on a defense if there is evidence that creates a reasonable doubt about an element of the charged offense. We view the evidence in the light most favorable to the defendant to determine whether there is sufficient evidence to support a jury instruction. A trial court errs if it refuses to instruct the jury on an issue that has been adequately raised. A court, however, may refuse to give an instruction that is irrelevant or inapplicable.

2009 ND 182, ¶ 13, 774 N.W.2d 254 (citations omitted). A trial court must give the parties an opportunity to object on the record to the instructions. N.D.R.Crim.P. 30(b). The parties must object to an instruction, or failure to give an instruction, on the record. N.D.R.Crim.P. 30(c).

[¶ 13] At trial, Lehman argued that he was a bounty hunter working as an agent of A–Affordable Bail Bonds when he apprehended Flyinghawk. He did not argue he apprehended Flyinghawk as a private person nor did he request a jury instruction regarding a private person's authority to arrest. Moreover, Lehman did not object to the trial court's omission of an instruction on a private

person's authority to arrest. Therefore, the issue was not properly preserved on appeal. *See* N.D.R.Crim.P. 30(d)(1)(B). However, this Court may review instructions that have not been properly preserved for appeal to determine whether the alleged error constitutes an obvious error which affects the substantial rights of the defendant. *State v. Johnson*, 2009 ND 76, ¶ 10, 764 N.W.2d 696. In reviewing whether obvious error has occurred, this Court has stated:

> The power to notice obvious error is one we exercise cautiously and only in exceptional circumstances. It should be exercised only where a serious injustice has been done to the defendant. In assessing the possibility of error concerning substantial rights under N.D.R.Crim.P. 52(b), we examine the entire record and the probable effect of the actions alleged to be error in light of all the evidence.

*Id.* at ¶ 11 (citation omitted). In cases of nonconstitutional error, this Court determines whether the error had a significant impact on the verdict when the court failed to provide an instruction and there was no objection by the aggrieved party. *Id.* On appeal, Lehman argues that he had authority to apprehend Flyinghawk as a private person because Flyinghawk had been charged with a crime and had jumped bail. Lehman appears to be contending that if the trial court had provided the instruction, and the jury found he was not acting as a bounty hunter, the jury could have then found his apprehension of Flyinghawk was lawful under a private person's right to arrest.

[¶ 14] Under N.D.C.C. § 29–06–20, a private person may arrest another person:

1. For a public offense committed or attempted in the arresting person's presence.

2. When the person arrested has committed a felony, although not in the arresting person's presence.

3. When a felony has been in fact committed, and the arresting person has reasonable grounds to believe the person arrested to have committed it.

[¶ 15] After reviewing the entire record and the probable effect of the alleged error, we conclude Lehman has not shown that his substantial rights were violated by the trial court's failure to provide an instruction on a private person's authority to arrest. Assuming without deciding, that Lehman's actions satisfy the conditions under N.D.C.C. § 29–06–20 describing when a private person has authority to make an arrest, the record contains sufficient evidence to sustain the jury's verdict. Lehman's actions were not justified under a private person's authority to arrest. The evidence shows Lehman did not arrest Flyinghawk and deliver him, without unnecessary delay, to law enforcement. *See* N.D.C.C. §§ 29–06–23 and 29–06–25. Lehman apprehended Flyinghawk, restrained him for two hours, and negotiated Flyinghawk's release. There is no legal authority that provides for restraining an individual to obtain a ransom or reward. Therefore, even assuming that the jury could have found Lehman could apprehend Flyinghawk under N.D.C.C. § 29–06–20, there was sufficient evidence to sustain the jury's verdict. Because the absence of this jury instruction did not affect Lehman's substantial rights, we hold the failure to provide a jury instruction on a private person's authority to arrest was not obvious error.

## IV

[¶ 16] Lehman argues the verdicts of guilty of kidnapping and not guilty on attempted theft by deception are incon-

sistent because one of the elements of kidnapping is a request for a reward or ransom. He contends that the not guilty verdict for theft by deception demonstrates that the jury did not believe Lehman requested a reward or ransom for Flyinghawk's release. He also contends that the jury verdict cannot be rationally explained by the evidence and jury instructions.

[¶ 17] The standard of review for reconciling a jury verdict is whether the verdict is legally inconsistent. *State v. Jacob,* 2006 ND 246, ¶ 10, 724 N.W.2d 118. In *Jacob,* we explained our standard of review for reconciling a jury verdict:

> Strict standards of logical consistency need not be applied to jury verdicts in criminal cases. Reconciliation of a verdict, therefore, includes an examination of both the law of the case and the evidence in order to determine whether the verdict is logical and probable and thus consistent, or whether it is perverse and clearly contrary to the evidence.

2006 ND 246, ¶ 10, 724 N.W.2d 118 (citation omitted).

[¶ 18] In this case, the jury received an instruction on kidnapping and an instruction on attempt to commit theft by deception. The kidnapping jury instruction provided that the State must prove beyond a reasonable doubt that:

1) On or about November 7, 2008, in Cass County, North Dakota, the Defendant, Troy Terrance Lehman, having abducted, continued to restrain Daniel Flyinghawk; and,

2) The Defendant did so intending to hold Daniel Flyinghawk for ransom or reward.

The jury instruction on attempt to commit theft by deception provided that the State must prove beyond a reasonable doubt that:

1) On or about November 7, 2008, in Cass County, North Dakota, the Defendant Troy Terrance Lehman knowingly attempted to deprive Daniel Flyinghawk, by deception, [of] certain property, namely money and/or title to an automobile;

2) Defendant acted with intent to deprive the owner of money and/or the automobile;

3) The money and/or automobile attempted to be stolen had a value in excess of $500.00;

4) Defendant's conduct constituted a substantial step toward depriving the owner of the subject automobile.

To prove attempt to commit theft by deception, the State had the burden to prove Lehman "knowingly attempted to deprive Daniel Flyinghawk, by deception, [of] certain property, namely money and/or title to an automobile." The State also had the burden to prove that Lehman's conduct constituted, "a substantial step toward depriving the owner of the subject automobile." For kidnapping, the State was only required to prove that Lehman "intend[ed] to hold Daniel Flyinghawk for ransom or reward." Although there are common elements between the two charges, there are additional elements to attempt to commit theft by deception, including that the defendant's conduct must constitute a substantial step toward depriving the owner of the subject property. Kidnapping required only intent, which distinguishes the two crimes. The jury could reasonably have found Lehman intended to hold Flyinghawk for ransom, but did not take a substantial step to deprive him of property as required by attempted theft by deception. After an examination of both the law of the case and the evidence, we hold the

verdicts are logical, probable, and consistent.

## V

[¶ 19]   We affirm the trial court's judgment.

[¶ 20] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.