Filed 10/23/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 229

State of North Dakota, Plaintiff and Appellee

v.

Gene Carl Kirkpatrick, Defendant and Appellant

No. 20110312

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Steven L. Marquart, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Birch P. Burdick, State’s Attorney, Courthouse, P.O. Box 2806, Fargo, ND 58108-2806, for plaintiff and appellee.

Daniel E. Gast, 35 Fourth Street North, Suite 201, Fargo, ND 58102, for defendant and appellant.

State v. Kirkpatrick

No. 20110312

Kapsner, Justice.

[¶1] Gene Kirkpatrick appeals from a criminal judgment entered after a jury found him guilty of conspiracy to commit murder and conspiracy to commit burglary.  We conclude his statement to law enforcement was voluntary and properly used against him, the evidence was sufficient to sustain his conspiracy to commit burglary conviction,  and the trial court did not err in issuing jury instructions.  We affirm.

I

[¶2] On October 26, 2009, Kirkpatrick’s son-in-law, Phillip Guttuso, was found bludgeoned to death in his Fargo home.  Guttuso’s car and various household items were stolen.  Michael Nakvinda, a man Kirkpatrick had employed on miscellaneous projects, was convicted in December 2010 of murdering Guttuso.  
State v. Nakvinda
, 2011 ND 217, 807 N.W.2d 204.

[¶3] After Guttuso’s death, law enforcement met with Kirkpatrick in his home state of Oklahoma on October 31, 2009, and obtained a statement from him.  Based on Kirkpatrick’s incriminating interview statements, Kirkpatrick was charged with conspiracy to commit murder and conspiracy to commit burglary.

[¶4] A jury trial was held in July 2011.  At trial, the State introduced Kirkpatrick’s interview with law enforcement as evidence that after Guttuso’s wife, who was Kirkpatrick’s daughter, died in March 2009, Kirkpatrick wanted the Guttusos’ child raised in Oklahoma, not in Fargo with Guttuso.  Because Guttuso would not give up custody of the child, the State argued Kirkpatrick and Nakvinda conspired to murder Guttuso.  Kirkpatrick’s interview with law enforcement provided evidence Kirkpatrick and Nakvinda discussed killing Guttuso on multiple occasions; Kirkpatrick provided $3,000 to Nakvinda for expenses a few days prior to Guttuso’s death; and Kirkpatrick provided Nakvinda with Guttuso’s schedule and a videotape of Guttuso’s home “for [Nakvinda] to . . . be familiar with the place.”

[¶5] In his law enforcement interview, Kirkpatrick stated that while he did want the child to come to Oklahoma, his statements to Nakvinda about killing Guttuso were not to be taken seriously because, “I  said [to Nakvinda] we’re just talking about this stuff . . . . I don’t know that I want to do this.”  Kirkpatrick asserted Nakvinda misinterpreted his intentions and unilaterally decided to kill Guttuso.

[¶6] At the conclusion of the State’s case, the State requested the trial court modify the draft jury instructions to clarify the conspiracy to commit murder charge was for intentional murder.  Kirkpatrick objected, asserting the change would unfairly prejudice him because he was charged with conspiracy to commit felony murder,
(footnote: 1) not conspiracy to commit intentional murder.  The trial court granted the State’s request.  Additionally, Kirkpatrick sought a jury instruction allowing consideration of his asserted extreme emotional disturbance at the time of the alleged conspiracy to commit murder due to the loss of his daughter and perceived loss of his granddaughter.  The trial court denied the request, and the jury found Kirkpatrick guilty on both charges.

II

[¶7] On appeal, Kirkpatrick argues his statement to law enforcement after Guttuso’s death was involuntary and should not have been used as evidence against him.  Before trial, Kirkpatrick sought to suppress his statement.  After a hearing and making detailed findings of fact, the court denied his motion.

[¶8] In reviewing a district court’s denial of a motion to suppress evidence, this Court “defer[s] to the district court’s findings of fact and resolve[s] conflicts in testimony in favor of affirmance.”  
State v. Smith
, 2005 ND 21, ¶ 11, 691 N.W.2d 203.  This Court will affirm a district court’s decision if “there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence.”  
City of Fargo v. Thompson
, 520 N.W.2d 578, 581 (N.D. 1994) (citations omitted).

[¶9] “A confession is voluntary if it is a product of the defendant’s free choice rather than a product of coercion.”  
State v. Goebel
, 2007 ND 4, ¶ 16, 725 N.W.2d 578 (citation omitted).  “Voluntariness is determined by examining the totality of the circumstances surrounding the confession.”  
State v. Pickar
, 453 N.W.2d 783, 785 (N.D. 1990) (citations omitted).  The voluntariness inquiry focuses on: “(1) the characteristics and conditions of the accused at the time of the confession, . . . and (2) the details of the setting in which the confession was obtained . . . .”  
Goebel
, at ¶ 16 (citations omitted).

[¶10] In denying Kirkpatrick’s motion, the trial court found Kirkpatrick was educated, in good health, and did not indicate he was too tired or too hungry to continue the interview.  Kirkpatrick did not ask for a break, but he was given a break and water during the interview, and although he was grieving, he was not under “any great or very emotional distress” due to his daughter’s death.  The trial court found nothing in Kirkpatrick’s age, sex, race, education level, physical or mental condition suggested the statement was involuntary.

[¶11] In addressing the second voluntariness prong, the trial court found the interview was informally conducted at either the Jones Police Department or Jones City Hall near Kirkpatrick’s home, Kirkpatrick voluntarily spoke with law enforcement, and he was told he could leave several times.  The court listened to the recording of the 2 hour and 47 minute interview and found the officers were cordial, polite, and did not raise their voices.  Near the end of the interview, the officers asked Kirkpatrick if he felt “entrapped,” and Kirkpatrick said, “[y]ou all have totally done your job . . . [in] a very kind and gracious way.”

[¶12] Kirkpatrick asserts the interview changed from “voluntary to [involuntary] prior to . . . making any statements that could be considered incriminating.”  He contends the police lied about Nakvinda incriminating Kirkpatrick, used interrogation techniques such as displaying empathy for losing his daughter and custody of his granddaughter, and appealed to Kirkpatrick’s conscience.  These are relevant factors; however, they are only individual factors in the larger totality of the circumstances analysis.  
See
 
Pickar
, 453 N.W.2d at 785.  The State had the burden of proving the confession was voluntary, but Kirkpatrick did not identify in the suppression hearing or on appeal where or how the confession became involuntary.

[¶13] Ultimately, “[t]he voluntariness of a confession depends upon questions of fact to be resolved by the district court.”  
State v. Crabtree
, 2008 ND 174, ¶ 13, 756 N.W.2d 189 (citation omitted).  In this case, the record supports the trial court’s conclusion the confession was voluntary.  The court made detailed findings of fact, weighed the evidence, and found the confession to be voluntary.  “Because the district court is in a superior position to judge credibility and weight, we give great deference to a district court’s determination of voluntariness.”  
Id.
  Here, “there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence.”  
Thompson
, 520 N.W.2d at 581.  It was not erroneous to admit the confession.

III

[¶14] Kirkpatrick argues the trial evidence was insufficient to sustain his conspiracy to commit burglary conviction.  He argues there is no evidence of an agreement to burglarize or evidence Nakvinda entered Guttuso’s home without license or permission.  A person is guilty of burglary under N.D.C.C. § 12.1-22-02(1) if:

[H]e willfully enters or surreptitiously remains in a building or occupied structure, or a separately secured or occupied portion thereof, when at the time the premises are not open to the public and the actor is not licensed, invited, or otherwise privileged to enter or remain as the case may be, with intent to commit a crime therein.

A person commits conspiracy under N.D.C.C. § 12.1-06-04(1) if:

[H]e agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy. The agreement need not be explicit but may be implicit in the fact of collaboration or existence of other circumstances.

[¶15] The issue in a sufficiency of the evidence appeal is whether evidence exists allowing the jury to draw an inference reasonably tending to prove guilt.

To successfully challenge the sufficiency of the evidence on appeal, a defendant must show there is no reasonable inference of guilt when viewing the evidence in the light most favorable to the verdict. . . .  In deciding whether there is sufficient evidence, we do not resolve conflicts in the evidence nor do we weigh the credibility of the witnesses. We determine only whether there is competent evidence which could have allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction.

State v. Delaney
, 1999 ND 189, ¶ 4, 601 N.W.2d 573 (quotation omitted).

[¶16] Kirkpatrick’s interview statement contains ample evidence to sustain his conspiracy to commit burglary conviction.  At trial, a recording of Kirkpatrick’s entire interview was played for the jury, and the transcript was provided.  The interview contains the following exchanges:

Agent Cusick: [Nakvinda] left the meeting with the explicit understanding that he was going to North Dakota . . . taking care of business . . . picking up the Porsche, and coming back. . . .

Kirkpatrick: Yeah.

. . . .

Agent Cusick: What was the deal with the Porsche?  

Kirkpatrick: [I]t was his idea. [Nakvinda] says did he have anything of value?  And I said no.  I said he’s got a Porsche, and he said . . . that’s of value, and we can cover it up by doing that.

. . . .

Detective Lies: But the idea was . . . to take the car, ransack the house a little bit, make it look like a robbery.

Kirkpatrick: That’s what [Nakvinda] said. . . . Yeah.

These and other similar interview statements are evidence showing an agreement between Kirkpatrick and Nakvinda to kill Guttuso and make the killing look like a burglary for cover.  Kirkpatrick’s assertion the record contains “absolutely” no evidence of a conspiracy to commit burglary ignores his own statement.

[¶17] Physical evidence also corroborates the interview statements.  The State introduced evidence showing Guttuso’s Porsche and various household items were stolen and later found in Nakvinda’s possession.  Under N.D.C.C. §12.1-06-04(1), evidence of an explicit agreement is not necessary:  “The [conspiracy] agreement need not be explicit but may be implicit in the fact of collaboration or existence of other circumstances.”  Based on the evidence presented, the jury could properly infer Kirkpatrick and Nakvinda’s discussions of taking Guttuso’s items, and their later discovery in Nakvinda’s possession, evidenced an agreement to burglarize Guttuso’s home.

[¶18] Kirkpatrick also asserts the evidence was insufficient to show an intent to burglarize because the State failed to prove how Nakvinda entered Guttuso’s home.  Kirkpatrick  suggests Nakvinda may have been invited in.  In 
State v. Olson
, this Court rejected a similar argument that because no direct evidence of forced entry or lack of consent to enter existed, the evidence was insufficient to sustain a burglary conviction.  290 N.W.2d 664, 673-74 (N.D. 1980).  This Court held circumstantial evidence showing Olson did not have consent to enter was sufficient to support a burglary conviction.  
Id.
  Specifically, this Court noted Olson did not know the victim, thus the jury could properly infer he did not have consent to enter the home.  
Id.
 at 674.

[¶19] Here, the jury heard evidence Guttuso did not know Nakvinda, though they may have previously met; Guttuso’s Porsche and valuables were taken from his home and found in Nakvinda’s possession; and Kirkpatrick stated their intent was to make the killing look like a burglary.  The jury could properly infer Nakvinda, like Olson, did not have license or permission to enter a home of someone he hardly knew, and even if he did, it was obtained through trickery or deception.

[¶20] We conclude competent evidence allowing a reasonable inference of guilt existed for the jury to weigh, and the jury found a conspiracy to commit burglary existed.  As this Court has noted, “we do not resolve conflicts in the evidence nor do we weigh the credibility of the witnesses.”  
Delaney
, 1999 ND 189, ¶ 4, 601 N.W.2d 573 (quoting 
State v. Gagnon
, 1999 ND 13, ¶ 23, 589 N.W.2d 560).

IV

[¶21] Kirkpatrick argues the trial court violated his Sixth Amendment rights by issuing jury instructions inconsistent with the charging document.  He asserts he was charged with conspiracy to commit felony murder, but the trial court instructed the jury the conspiracy charge was for intentional murder.

[¶22] “To satisfy [S]ixth [A]mendment standards, a criminal information is sufficient if it is specific enough to advise the defendant of the charge against him, to enable him to prepare for trial, and to plead the result in bar of a subsequent prosecution for the same offense.”  
City of Grand Forks v. Mata
, 517 N.W.2d 626, 628 (N.D. 1994) (citations omitted).  “This Court applies a de novo standard of review when reviewing an alleged violation of a constitutional right.”  
State v. Sorenson
, 2009 ND 147, ¶ 16, 770 N.W.2d 701 (citing 
State v. Blue
, 2006 ND 134, ¶ 6, 717 N.W.2d 558).

[¶23] Here, the information charging the conspiracy to commit murder cited the murder statute, N.D.C.C. § 12.1-16-01, and did not cite subsections a, b, or c, identifying intentional, extreme indifference, or “felony murder”:

[T]he above-named defendant, agreed with one or more people, explicitly or implicitly, to engage in or cause conduct which, in fact constitutes the crime of murder, and any one or more of such persons does an overt act to effect an object of the conspiracy by willfully committing or attempting to commit robbery and/or burglary and in the course of and in furtherance of such crime or of immediate flight therefrom, the person or any other participant in the crime willfully caused the death of any person . . . .

[¶24] At the end of the State’s case, over Kirkpatrick’s objection, the court rewrote the draft jury instruction defining murder as intentional murder.  The court did not consider the change an amendment under N.D.R.Crim.P. 7(e).  The trial judge said: “[T]he Court [modified the jury instruction] because of the mistaken way in which the Court listed the elements previously because I had misinterpreted the State’s information as alleging conspiracy to commit felony murder, and that—and I will repeat again the Court was mistaken in reading the information that way.”  Though the information does include some felony murder language, the State had to include the overt conspiracy acts in its information as this Court has upheld a trial court’s conspiracy charge dismissal for failing to include an overt act in the information.  
State v. Gwyther
, 1999 ND 15, ¶¶ 13-16, 589 N.W.2d 575.

[¶25] The trial judge was not incorrect in determining the information provided Kirkpatrick with adequate constitutional notice.  We have explained that the Sixth Amendment requires a charging document to contain enough specificity so that the defendant can prepare a meaningful defense.  It does not, however, require exact specification because, when “considering the sufficiency of a criminal information, technicalities have been abolished, and it is only necessary to plead an offense in its usually designated name in plain, ordinary language.”  
Mata
, 517 N.W.2d at 628 (citing 
City of Wahpeton v. Desjarlais
, 458 N.W.2d 330, 333 (N.D. 1990)).  Thus, “[m]ere defects, inaccuracies, or omissions in an information do not affect the subsequent proceedings, unless as a result, no offense is charged.”  
Id.
 (citing 
Desjarlais
, 458 N.W.2d at 333).

[¶26] Further, Kirkpatrick has not shown he was prejudiced.  “Even constitutional errors do not automatically require reversal if it is shown they were harmless.”  
State v. Just
, 2006 ND 225, ¶ 7, 723 N.W.2d 541 (citations omitted).  Kirkpatrick argues the jury instruction change caused him “extreme prejudice,” but he fails to identify how he was prejudiced or how his case would have changed had the information clearly stated conspiracy to commit intentional murder.

[¶27] This case is factually similar to 
State v. Bethke
, 2009 ND 47, 763 N.W.2d 492. In 
Bethke
, we rejected a Sixth Amendment challenge when the State filed a criminal complaint but failed to file an information because, “the information would not have provided [the defendant] with any knowledge he did not already have.”  
Id.
 at ¶ 18.  We noted not only did the defendant have knowledge of the charge, he had it substantially in advance of trial.  
Id.

[¶28] Kirkpatrick had similar advance notice.  Nakvinda was convicted in December 2010 of murder, robbery, burglary, and theft in connection with Guttuso’s death.  Over six months later, in July 2011, Kirkpatrick’s trial began. Kirkpatrick had notice of the State’s evidence because Kirkpatrick testified in Nakvinda’s earlier murder trial.  He knew the State’s case against him was anchored in the belief Kirkpatrick and Nakvinda conspired to kill Guttuso; indeed, the thrust of the State’s evidence was derived from Kirkpatrick’s interview statement.  The State’s case did not focus on whether Kirkpatrick and Nakvinda conspired to burglarize Guttuso’s home and Guttuso died in the course of it, illustrating a felony murder; rather, the State argued their plan was to kill Guttuso and to burglarize the home as cover.

[¶29] Similarly, from the trial’s outset, Kirkpatrick’s entire defense was premised on the assertion there was no agreement between Kirkpatrick and Nakvinda to kill Guttuso; their discussions of killing Guttuso were just “locker-room talk.”

[¶30] We conclude the information was sufficiently clear to provide Kirkpatrick adequate constitutional notice of the charges against him, and Kirkpatrick was not prejudiced as he had sufficient notice to allow him to present a meaningful defense.  
Mata
, 517 N.W.2d at 628.

V

[¶31] Kirkpatrick asserts the trial court erred in its refusal to grant an extreme emotional disturbance instruction.  “Jury instructions must fairly and adequately advise the jury of the law, and the court may refuse to give a requested instruction if it is irrelevant or does not apply.”  
State v. Clark
, 2012 ND 135, ¶ 8, 818 N.W.2d 739 (citing 
State v. Starke
, 2011 ND 147, ¶ 12, 800 N.W.2d 705).  “On appeal, jury instructions are reviewed as a whole to determine whether they fairly and adequately advised the jury of the applicable law.”  
Id.
 (citing 
State v. Lehman
, 2010 ND 134, ¶ 12, 785 N.W.2d 204).

[¶32] Kirkpatrick asserts he was entitled to an extreme emotional disturbance instruction because after his daughter, Guttuso’s wife, died, and Guttuso retained custody of the child, Kirkpatrick suffered from extreme emotional distress when the crimes occurred.  Kirkpatrick’s denied instruction sought to apply the murder statute’s extreme emotional disturbance section to his conspiracy to commit murder charge.  Section 12.1-16-01(2), N.D.C.C., states:

A person is guilty of murder, a class A felony, if the person causes the death of another human being under circumstances which would be class AA felony murder, except that the person causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse.  The reasonableness of the excuse must be determined from the viewpoint of a person in that person’s situation under the circumstances as that person believes them to be.  An extreme emotional disturbance is excusable, within the meaning of this subsection only, if it is occasioned by substantial provocation, or a serious event, or situation for which the offender was not culpably responsible.

The trial judge refused to give Kirkpatrick’s sought instruction because extreme emotional disturbance is not a defense to conspiracy.

[¶33] On appeal, Kirkpatrick argues extreme emotional disturbance applies to conspiracy because, “[c]onspiracy is an offense of the same class as the crime which was the objective of the conspiracy.”  N.D.C.C. § 12.1-06-04(6).  Thus, Kirkpatrick asserts, it would be illogical for the extreme emotional disturbance instruction to apply if he personally committed the murder, but not if he conspired to commit the murder.  While we have said “[a] defendant is entitled to a jury instruction on a legal defense if there is evidence to support it,” 
State v. Gagnon
, 1997 ND 153, ¶ 9, 567 N.W.2d 807 (quotation omitted), the extreme emotional disturbance section is a mitigating factor, not a defense to a murder.  
Sorenson
, 2009 ND at ¶¶ 28-29, 770 N.W.2d 701.

[¶34] We are unable to find caselaw supporting or defending extreme emotional disturbance’s  application to a conspiracy to commit murder charge.  However, we do not need to decide whether extreme emotional disturbance applies to a conspiracy to commit murder charge, because even if it were to apply, it cannot apply under the facts of this case.

[¶35] The extreme emotional disturbance section applies if the extreme emotional disturbance “is occasioned by substantial provocation, or a serious event, or situation for which the offender was not culpably responsible.”  N.D.C.C. § 12.1-16-01(2).  Assuming, without deciding, the death of Kirkpatrick’s daughter and asserted loss of his grandchild was sufficient to satisfy the provocation or serious event requirement, we conclude too much time had passed between her death and the crime for the disturbance to continue to operate as a mitigating factor.  At some point in time, the emotional disturbance has to become attenuated; otherwise, as long as an individual remained distraught from an event, mitigation theoretically would perpetually exist.

[¶36] A review of this case’s time line illustrates why Kirkpatrick’s proposed extreme emotional disturbance instruction cannot apply.  Kirkpatrick’s daughter, Guttuso’s wife, died in March 2009.  Kirkpatrick’s interview statement shows he committed calculated overt acts in furtherance of the conspiracy over six months later.  For example, Kirkpatrick videotaped Guttuso’s home in early October 2009, and shortly before Guttuso’s October 26, 2009, murder, Kirkpatrick met with Nakvinda to give him $3,000 for expenses.  A substantial amount of time had passed between the provocation or serious event and the commission of the crime, and the evidence does not suggest Kirkpatrick was re-experiencing the serious event at the time of his engaging in planning with Nakvinda.

[¶37] Our determination too much time passed between the triggering event and the crime is bolstered by the trial court’s suppression hearing ruling.  The trial court found during the October 31, 2009, interview, Kirkpatrick “was still grieving over his daughter’s death that happened seven months previous, but there is no indication from [the] recording of his interview that he was under any great or very emotional distress because of that at the time of the interview.”

[¶38] Because the determination whether extreme emotional disturbance can apply to a conspiracy to commit murder charge is not necessary for disposition of this case, we do not reach the issue.

VI

[¶39] We conclude Kirkpatrick’s statement to law enforcement was voluntary and properly used against him, the evidence was sufficient to sustain his conspiracy to commit burglary conviction, and the trial court did not err in issuing jury instructions.  We affirm the criminal judgment.

[¶40] Carol Ronning Kapsner

Daniel J. Crothers

Gerald W. VandeWalle, C.J.

Mary Muehlen Maring

Dale V. Sandstrom

FOOTNOTES
1:    
“Felony murder” is a murder that occurs during the commission or escape after the commission of a crime listed in N.D.C.C. § 12.1-16-01(c).